James P. McNAMARA, Plaintiff-Appellee,

v.

WEICHSEL DAMPSCHIFFFAHRTS AG KIEL, GERMANY, Defendant and Third-Party Plaintiff-Appellant,

and

Montship Lines Ltd., Defendant-Appellee,

v.

PITTSTON STEVEDORING CORP., Third-Party Defendant-Appellee.

No. 269, Docket 26587.

United States Court of Appeals Second Circuit.

Argued March 21, 1961.

Decided Sept. 7, 1961.

---

Fenton F. Harrison, Buffalo, N. Y. (James M. Estabrook, New York City, Coffey, Heffernan & Harrison, Buffalo, N. Y., Haight, Gardner, Poor & Havens, New York City, on the brief), for defendant and third-party plaintiff-appellant.

Edward J. Desmond, Buffalo, N. Y. (John E. Drury, Jr., Desmond & Drury, Buffalo, N. Y., on the brief), for plaintiff-appellee.

Warren A. Jackman, Chicago, Ill. (Bradley, Pipin, Vetter & Eaton, Chicago, Ill., Hamilton, Dobmeier, Connelly & Kirchgraber, Buffalo, N. Y., on the brief), for defendant-appellee.

J. Edmund DeCastro, Jr., Buffalo, N. Y. (Harry J. Kelly, Jaeckle, Fleischmann, Kelly, Swart & Augspurger, Buffalo, N. Y., on the brief), for third-party defendant-appellee.

Before MOORE, FRIENDLY and SMITH, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

The plaintiff (appellee), James P. Mc-Namara, a longshoreman employed by Pittston Stevedoring Corp. (Pittston), was injured while engaged in unloading cargo from the M/V Suderholm, a vessel owned by defendant Weichsel Dampschifffahrts AG Kiel (Weichsel). Weichsel had engaged Pittston to do the stevedoring work. After the commencement of the original action, Weichsel filed a third-party complaint against Pittston. The charterer, Montship Lines, Ltd. (Montship), by amended pleadings was sued both by plaintiff and by Weichsel. A jury trial ensued. At the close of the trial, the court dismissed plaintiff's complaint against Montship. Eleven written questions were then submitted to the jury. The jury found that plaintiff's injuries were caused by the negligence of Weichsel and awarded damages of $50,000. However, the jury also found that Pittston was negligent in the un-

loading operation; that Pittston's negligence was the proximate cause or one of the proximate causes of the accident but that it was not "the principal or primary cause." Further complicating the situation were the jury's answers that Weichsel's fault was not "due to active negligence" but was "due to passive negligence."

In view of these answers and, as might have been expected, motions were addressed to the trial court (1) by Weichsel for judgment of indemnity against Pittston; (2) by Pittston for dismissal of Weichsel's third-party complaint; (3) by Weichsel for dismissal of plaintiff's complaint notwithstanding the verdict. The court denied Weichsel's motions, granted Pittston's motion, directed the entry of judgment in favor of plaintiff against Weichsel for $50,000, dismissed Weichsel's third-party complaint against Pittston, and dismissed plaintiff's complaint against Montship. From such judgment and orders, Weichsel appeals. Two distinct controversies are thus presented: (1) plaintiff's claim against Weichsel and (2) Weichsel's claim against Pittston.

I.) Plaintiff's Claim against Weichsel

Upon all the facts the jury found Weichsel's negligence to have been the cause of plaintiff's injuries. Under the law, this verdict should stand unless, as Weichsel argues, there was insufficient evidence of Weichsel's liability to be submitted to the jury or there were reversible errors in the charge or the verdict was inconsistent with the jury's fact findings. Because the facts are controlling in the resolution of these matters, a somewhat detailed analysis must be made.

The Suderholm arrived in Buffalo, N. Y., on July 9, 1958. By its charter with Weichsel, Montship was to arrange and pay for unloading. Pittston in turn was engaged by Montship for this operation. Because of the hour (after 5:00 P.M.) volunteer crewmen were recruited to operate the winches. They were paid by Pittston for their extra work and listed-

by Pittston as its employees. These men were German and did not understand English. Pittston's signalman did not speak German so that signals had to be given by hand (pantomime) methods. Bundles of steel angle irons were to be lifted from the hold, swung over the side of the ship and lowered onto a truck on the dock. Plaintiff was on the platform of the truck, prepared to unhook the chains supporting the steel after it had come to rest on the truck. A bundle of steel was brought from the hold, swung over to the dock and lowered to within a short distance from the truck's platform when suddenly the steel moved towards the side of the ship, struck plaintiff's leg, and knocked him to the ground.

In an attempt to ascertain the cause of the accident, many witnesses were called. Plaintiff naturally sought to hold the shipowner, Weichsel, liable and Weichsel was most interested in passing liability, if any, on to Pittston. Plaintiff's theory for holding Weichsel liable briefly is that Weichsel knowingly permitted the unloading to be carried on by an incompetent winchman amidst surroundings of confusion and lack of definite authority and that under these circumstances Weichsel's First Mate took over and gave orders which were so carried out that the bundle of steel was pulled towards the ship instead of being lowered onto the truck.

■ Although the conflict in the testimony was substantial, there was proof that it was part of the First Mate's duties to supervise unloading and that he gave signals which resulted in the steel being moved towards the ship instead of onto the truck. Under the court's charge, the jury could have found that the First Mate took charge of the operation and that his orders and the ensuing operation of the winches caused the accident. Weichsel on the other hand contends that the winchmen and the First Mate were all employees (borrowed servants) of Pittston and, hence, by their actions could not have imposed liability upon Weichsel. There is little doubt

but that an employee of Pittston was acting as the signalman. But there is testimony that at the critical time of the final lowering of the steel, he walked away. There was testimony that the First Mate then assumed the task of giving orders. After the accident, the First Mate was hired by Pittston for the purpose of supervising the remainder of the unloading. This hiring, Weichsel argues, had the legal effect of relating his employment back to the commencement of the unloading operation. Weichsel relies upon theories of ratification of, and assumption of liability for, the First Mate's conduct. Here, however, the requisites for the application of these doctrines are wholly lacking. There being evidence sufficient to support the jury's fact conclusions, its finding of liability against Weichsel should not be disturbed.

## II.) Weichsel's Claim against Pittston

Weichsel asserts that the trial court erred as a matter of law in dismissing Weichsel's claim for indemnity against Pittston. In denying Weichsel's claim for a recovery over against Pittston, the trial court held that in deciding the case as between plaintiff and Weichsel, the jury must have found (1) that the First Mate interfered with the unloading operations of Pittston, or (2) that the winches were under Weichsel's control and were negligently operated, or both. This, said the court, amounted to "active negligence" on Weichsel's part. Upon this factual assumption, the court then decided as a question of fact and law that such interference or negligent operation "amounted to unreasonable interference by Weichsel with Pittston's unloading operations and a breach of the contract and was such conduct on the part of Weichsel as to preclude recovery over against Pittston." The correctness of this ruling must first be tested against the background of the case at this stage. Vis-à-vis plaintiff the jury had decided that his injuries were caused by Weichsel's negligence but at the same time had said that Pittston was negligent in unloading the steel and that this negligence was the proximate cause or one

of the proximate causes of the accident. In its answer to the next question "9," the jury found that Pittston's negligence was not "the principal or primary cause of the accident." Then to two questions "10" and "11," dealing rather abstractly with active and passive negligence, the jury answered that Weichsel's fault was not "active" negligence but was "passive." Despite these answers, the trial court interpreted the jury's finding against Weichsel as "active negligence." This situation well illustrates the dangers in the use of word-labels or terms unless they have some definite legal connotation in the assessment of liability and damages against a particular party as a consequence of their use. This danger is most succinctly pointed out by Mr. Justice Clark in his opinion in Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 569, 78 S. Ct. 438, 442, 2 L.Ed.2d 491, wherein he said that "in the area of contractual indemnity an application of the theories of 'active' or 'passive' as well as 'primary' or 'secondary' negligence is inappropriate." Thus, unless the jury knew that it was imposing financial liability upon Pittston or relieving it of such liability, or was holding Weichsel solely liable for plaintiff's injuries, its answers to the active-passive questions were without legal significance. What consequences, if any, did the jury understand would result from its answers as to active and passive negligence? And what standards were the jury to use in so answering?

The trial court charged that "Weichsel cannot have indemnity against Pittston, if Weichsel itself was guilty of active negligence in causing McNamara's injuries." Weichsel safely passed this possible barrier because the jury did not find it guilty of "active" negligence. It specifically answered "passive." The trial court also added another condition, namely, that "indemnity could arise in favor of Weichsel only if the accident were caused by the active or primary negligence of Pittston." However, to the question "9," "was Pittston's negligence

the principal or primary cause of the accident?" the jury answered "No" although it had just somewhat ambiguously answered "Yes" to the disjunctive question "was Pittston's negligence the proximate cause or one of the proximate causes of the accident?"

The jury did not bring in a verdict as between Weichsel and Pittston. Despite the fact that the jury had found Weichsel guilty only of "passive" negligence and that Pittston's negligence might have been the proximate cause of plaintiff's injuries, the trial court held that either the First Mate's orders or negligent operation of the winches or both "amounted to unreasonable interference by Weichsel with Pittston's unloading operations and a breach of the contract and was such conduct on the part of Weichsel as to preclude recovery over against Pittston."

 Pittston, having undertaken the stevedoring, was under a duty to perform it in a workmanlike manner. If it rendered substandard or improper service, Pittston would be under a duty to indemnify Weichsel for any liability imposed upon Weichsel as a result of such service. This obligation to indemnify may be nullified, however, if Weichsel's conduct was such as to preclude recovery. The difficulty lies in determining what conduct is sufficient to defeat Weichsel's right of indemnity. The fact that the jury found Weichsel to have been negligent in the action between plaintiff and Weichsel is not conclusive of such conduct. Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed. 2d 491; Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133.

 The trial court held that Weichsel's conduct precluded indemnity; Weichsel urges this court on the same facts to direct entry of judgment for indemnity against Pittston. However, whether Weichsel has been guilty of such conduct on its part as to foreclose

**904**

indemnity is essentially a question of fact and should be determined by a jury. In Weyerhaeuser, the Supreme Court said "all fact issues involved in the third-party action should have been submitted to the jury after the verdict in the main case" (355 U.S. at page 568, 78 S.Ct. at page 441). No such procedure was adopted by the trial court here. Nor does it follow that the Supreme Court's suggestion requires two separate submissions provided the jury is adequately instructed as to the legal principles which would apply to the two situations and is directed to decide liability, first, between the plaintiff and the defendant, and, second, between the third-party plaintiff and the third-party defendant.

■ Here there were at least two important fact questions. Was there substandard performance of its stevedoring contract by Pittston? Was there conduct by Weichsel sufficient to bar recovery? These issues were not submitted to the jury for its determination. As to substandard performance, despite Union objection should Pittston have supplied a signalman who could speak German? Did Pittston's signalman walk away at a critical time when the steel was not yet at rest on the truck? Who was responsible for the alleged confusion in giving orders? On the other side was Weichsel's interference such as to preclude recovery?

For a proper determination of the issues between Weichsel and Pittston, there must be a new trial on the indemnity issue; it might be well to heed the admonition of the Supreme Court in Weyerhaeuser and, in any charge or set of questions to be answered, to avoid "active," "passive," "primary" or "secondary" as the criterion for the determination of liability. These words have not yet become such terms of art that all legal consequences flowing therefrom can be definitely fixed once the jury has chosen the particular word.

The judgment in favor of plaintiff against Weichsel is affirmed. The judgment in favor of Montship is affirmed.

The judgment in favor of Pittston against Weichsel, dismissing the third-party complaint, is reversed and the case remanded for a new trial between these parties.