**WATERMAN STEAMSHIP CORPORA-TION, Appellant,**

**v.**

**Francis DAVID et al., Appellees.**

**No. 21830.**

United States Court of Appeals
Fifth Circuit.

Nov. 11, 1965.

Rehearing Denied Feb. 1, 1966.

George W. Healy, III, Harry S. Redmon, Jr., New Orleans, La., for appellant, Jas. Hy. Bruns, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., of counsel.

Christopher Tompkins, George W. Reese, New Orleans, La., for appellees, Cornelius G. Van Dalen, Deutsch, Kerrigan & Stiles, New Orleans, La., of counsel.

Before JONES and WISDOM, Circuit Judges, and BREWSTER, District Judge.

WISDOM, Circuit Judge:

This appeal turns on the Weyerhaeuser corollary to the Ryan doctrine of stevedore-shipowner indemnity.[1] Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corporation, 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Weyerhaeuser Steamship Company v. Nacirema Operating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491. Under the Sieracki line of decisions, a shipowner is liable to an employee of a stevedoring or ship-refitting company for an injury caused by negligence of the shipowner or unseaworthiness of the vessel on which the injured longshoreman or other employee

[1]. For a discussion of the Ryan doctrine see Baer, Admiralty Law of the Supreme Court Sec. 2-9 (1963). Vickery, Stevedore-Shipowner Indemnity: The Ryan Doctrine, in Tidelands and Mineral Law, 7th Ann. Tul. Tidelands Institute at 167, 168 (1963); Stover, Longshoremen-Shipowner-Stevedore; The Circle of Liability, 61 Mich.L.Rev. 539 (1963); White, A New Look at the Shipowner's Right-Over for Shipboard Injuries, 12 Stan.L.Rev. 717 (1960); Lucas, Flood Tide: Some Irrelevant History of the Admiralty, in the Supreme Court Review 249 (1964); Comment, 37 Tul.L.Rev. 786 (1963); Note, 62 Mich.L.Rev. 1446 (1964); Note, 24 La.L.Rev. 876 (1964).

is working.[2] The Ryan doctrine enables the shipowner to recover indemnity from the longshoreman's employer, when the unseaworthiness for which the shipowner is liable results from a breach of the stevedoring company's implied warranty of workmanlike service. Weyerhaeuser makes explicit a caveat implicit in Ryan: To recover indemnity, the shipowner's "conduct on its part [must not have been] sufficient to preclude recovery". 355 U.S. at 567, 78 S.Ct. at 441. The Supreme Court did not declare just what conduct is sufficient to bar indemnification, although the Court did declare that "in the area of contractual indemnity an application of the theories of 'active' or 'passive' as well as 'primary' or 'secondary' negligence is inappropriate." Id. at 569, 78 S.Ct. at 442. In the case before us the question was properly put to the jury. The jury decided that unseaworthiness was the proximate cause of the plaintiff's injuries and that the shipowner's conduct was "so great as to preclude recovery of indemnity." We affirm the judgment based on the jury's verdicts.

## I.

Francis David, a longshoreman employed by Atlantic & Gulf Stevedores, Inc., was injured while working aboard Waterman's S.S. Arizpa in New Orleans. David was one of a gang of longshoremen opening and clearing a between-decks cargo hatch. On Waterman vessels, the hatch covers rest on a series of I-beams. The beams lie from port to starboard. At each end of the I-beam there is a wheel which runs along a metal track. A jack bar inserted into a cam engages and disengages the wheel. The end of the beam also rests on an upper guide rail as an additional safety precaution. To clear the hatch for loading or unloading cargo, the longshoremen first remove the hatch covers, then one man on each end engages the wheel by inserting the jack bar

and rotating the cam. The other members of the gang, half on each end of the beam, roll the beam down to the end of the hatch by pulling with ropes or a metal pull bar inserted into a metal eye on each end of the beam. After they have rolled all of the I-beams down to the end of the hatch, the hatch is clear for loading of unloading.

On the morning of the accident, David's gang had already cleared the weather-deck cargo hatch without any difficulty. They then removed the hatch covers from the between-decks hatch and moved two of the I-beams to the end of the hatch without incident. David was operating the jack bar on the onshore end of the beams. As they were moving the third beam, the beam jumped the track at the offshore end and fell into the hold. The falling beam struck David and catapulted him into the hold. He was seriously injured.

David sued Waterman, the shipowner, alleging that his injuries were sustained as a result of unseaworthiness, "specifically, in that the track for the roller on said beam was not safely designed and the roller, which left the track, was worn and not fit for the use intended * *." In its answer, Waterman denied that the accident occurred in the manner alleged, denied the alleged unseaworthiness of the S.S. Arizpa and, as a special, alternative defense, pleaded contributory negligence on the part of David. Waterman filed a third party complaint against Atlantic & Gulf Stevedores for indemnification based on the contention that Atlantic breached its warranty of due care. Waterman alleged that Atlantic was aboard the S.S. Arizpa in connection with performance of general stevedoring work and was in full custody and control of the areas where David allegedly sustained injury, that it was the duty of Atlantic to perform its work with due diligence and safety, and that any injuries sustained were caused by the neg-

ligence and fault of Atlantic. The jury returned a general verdict for David against Waterman in the amount of $84,000.[3] The jury returned a second general verdict denying Waterman's claim against Atlantic stevedores. The court rendered judgment in accordance with the verdicts.

## II.

■ Waterman's argument on appeal rests chiefly on the contention that the jury's answers to certain interrogatories required a judgment in its favor and, at the very least, were inconsistent with answers to other interrogatories.[4] In answer to the first two interrogatories, the jury found that the proximate cause of the accident was the unseaworthiness of the beam roller assembly. In answer to the seventh interrogatory, the jury found that Atlantic was negligent, and that the negligence "caused or brought into play" the vessel's unseaworthiness. Waterman assumes that these findings necessarily required a verdict in its favor, relying on the Ryan and Crumady v. Joachim Hendrik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 holdings that a shipowner cast for unseaworthiness may recover over against the employer of the injured seaman if the employer's negligence amounts to a breach of warranty of workmanlike performance. But the jury also found, replying to the eighth interrogatory, that the negligence did not constitute a breach of Atlantic's warranty to perform its job in a reasonably safe and workmanlike manner. The jury's answer to the tenth interrogatory is consistent with its answer to the eighth interrogatory: The unseaworthi-

3. Waterman also appealed the general verdict in favor of David. This appeal has been settled and dismissed with the consent of all parties.

4. The following interrogatories were submitted to the jury:
   1) Was the S. S. Arizpa unseaworthy?
      (X)  Yes       ( )  No
   2) If yes, was that unseaworthiness a proximate cause of the plaintiff's injuries?
      (X)  Yes       ( )  No
   3) If the answers to (1) and (2) are yes, at what amount do you fix the damages sustained by the plaintiff as a result of the accident of which he complains. (This Court will make the computation for contributory negligence, if any, found by you in the following interrogatories).
      $84,000
   4) Was the plaintiff, Francis David, negligent?
      ( )  Yes       (X)  No
   5) If yes, was that negligence a proximate cause of his injuries?
      ( )  Yes       ( )  No
   6) If the answers to (4) and (5) are yes, to what degree was the plaintiff negligent? (0% to 100%) ........%
   7) If the answers to (1) and (2) above are yes, was such unseaworthiness caused or brought into play by any negligence on the part of plaintiff's employer, Atlantic & Gulf Stevedores, Inc., its agents or employees?
      (X)  Yes       ( )  No

   8) Did the agents or employees of the Atlantic & Gulf Stevedores, Inc. breach its warranty to perform its job in a reasonably safe, proper and workmanlike manner?
      ( )  Yes       (X)  No
   9) If the answer to (8) is yes, was such breach a proximate cause of plaintiff's injuries?
      ( )  Yes       ( )  No
   10) If the answer to (7) and (8) is yes, was the breach of unseaworthiness, if any, by Waterman so great as to preclude it from a recovery against Atlantic & Gulf on the Atlantic & Gulf warranty of workmanlike service?
      (X)  Yes       ( )  No
   CHECK THE APPROPRIATE VERDICTS:
   (X) We, the jury find for plaintiff, Francis David, and against the defendant, Waterman Steamship Company, as indicated above.
   ( ) We, the jury, find for defendant, Waterman Steamship Company, and against plaintiff, Francis David, as indicated above.
   ( ) We, the jury, find for third-party plaintiff, Waterman Steamship Company, and against third-party defendant, Atlantic & Gulf Stevedores, Inc., as indicated above.
   ( ) We, the jury, find for third-party defendant, Atlantic & Gulf Stevedores, Inc., and against third-party plaintiff, Waterman Steamship Company, as indicated above.

ness of the vessel was "so great as to preclude" Waterman's recovery from Atlantic for breach of warranty.

■ It is the "duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them", and "to reconcile the jury's findings, by exegesis if necessary * * * before we are free to disregard the jury's special verdict and remand the case for a new trial". Gallick v. Baltimore & Ohio R. Co., 1963, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618. If "there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way. For a search for one possible view of the case which makes the jury's finding inconsistent results in a collision with the Seventh Amendment." Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 1962, 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed. 2d 798.

### III.

■ The result the jury reached agrees with the Supreme Court's treatment of the stevedore's indemnity obligation as resting on contract, not tort principles.[5] The stevedore's negligence is immaterial unless it is a breach of the contractual warranty of workmanlike service and is the proximate cause of the longshoreman's injuries. And under the Weyerhaeuser dictum, the stevedore's breach of warranty may be excusable, if the shipowner's conduct is "sufficient to preclude recovery of indemnity".

The stevedore's "warranty of workman like service is comparable to a manufacturer's warranty of the soundness of its manufactured product. The shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service." Ryan, 350 U.S. at 133, 76 S.Ct. at 237. In a more recent case the Supreme Court, declining to take a bailment approach,[6] again noted that the considerations underlying the stevedore's warranty are the same as those which "underlie a manufacturer's or seller's obligation to supply free of defects." Italia Societa, etc. v. Oregon Stevedoring Company, 1964, 376 U.S. 315, 323, 84 S.Ct. 748, 11 L.Ed.2d 732 (Griffith's case). See also Reed v. S.S. Yaka, 1963, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448. In Griffith's case, allowing indemnity, the Supreme Court held that "the absence of negligence on the part of a stevedore who furnishes defective equipment is not fatal to the shipowner's claim of indemnity based on the stevedore's implied warranty of workmanlike service." The Court said: "Although in Ryan the stevedore was negligent, he was not found liable for negligence as such but because he failed to perform safely, a basis for liability including negligent and non-negligent conduct alike. * * * [L]iability should fall upon the party best situated to adopt preventive measures and thereby reduce the likelihood of injury." 376 U.S. at 319, 84 S.Ct. at 751.

5. The Supreme Court has "crossed the bridge" of contractual privity and entered "the zone of modern law that recognizes rights in third-party beneficiaries." Crumady v. Joachim Hendrik Fisser, 358 U. S. at 428, 79 S.Ct. at 448. The vessel is the third party beneficiary.

The stevedore's liability, however, may rest on tort as well as on contract. Even if there is no contract between the stevedoring company and the shipowner, the stevedore still has an independent duty to exercise due care in performing his work aboard the ship. There is much to be said for a tort approach. Baer, Admiralty Law of the Supreme Court, § 2–9

at 197–198. In tort the courts could apply the traditional maritime law technique of comparative fault as between shipowner and stevedoring company. See American Stevedores, Inc. v. Porello, 1947, 330 U.S. 446, 67 S.Ct. 847, 91 L. Ed. 1011; Gilmore & Black, Admiralty sec. 6–56 at 366–367. But see Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 in which the Court referred to Congress the possibility of applying comparative fault in the shipowner's suit for indemnity.

6. See Booth S.S. Co. v. Meier & Oelhaf Co., 2 Cir. 1958, 262 F.2d 310.

In Weyerhaeuser the breach of contract was the stevedore's negligence. The Supreme Court said: "If * * * respondent (stevedoring company) rendered a substandard performance which led to foreseeable liability of petitioner (the owner), the latter was entitled to indemnity *absent conduct on its part sufficient to preclude recovery.*" (emphasis added) 355 U.S. at 567, 78 S.Ct. at 441. The Court left no doubt that the law of contract determines what is "conduct sufficient to preclude recovery." The Court cited sections 295 and 315 of the Restatement of Contracts (First). Section 295 provides that: "If a promisor prevents or hinders * * * the performance of a return promise, and the * * * return promise (would have) been rendered except for such prevention or hindrance * * * the actual or threatened nonperformance of the return promise does not discharge the promisor's duty * * *" Section 315, entitled "Breach by Preventing or Hindering Performance by the Other Party"; reads:

"(1) Prevention or hindrance by a party to a contract of any occurrence or performance requisite under the contract for the creation or continuance of a right in favor of the

other party, or the discharge of a duty by him, is a breach of contract * * *"

"(2) Acts that would have been sufficient to hinder or prevent the occurrence of a condition or the performance of a return promise are not a breach of contract if the condition would not have occurred or the return promise have been performed had those acts not been done."

The Court cited section 571, 947, and 1264 of Corbin on Contracts dealing with excuse of a breach of contract through acts of the other party which hinder or prevent performance of the contract.

■■ These contract principles are implicit in the Weyerhaeuser dictum.[7] If a vessel's unseaworthiness prevents the stevedore's workmanlike performance, that is "conduct" on the part of the shipowner "sufficient to preclude recovery", and to excuse even a negligent breach by the stevedore. In Reddick v. McAllister Lighterage Line, Inc., 2 Cir. 1958, 258 F.2d 297, cert. denied 358 U.S. 908, 79 S.Ct. 235, 3 L.Ed.2d 229, for example, the court reversed, as clearly erroneous, a finding that the stevedore's fault required a judgment of indemnity in the shipowner's favor. The Second Circuit

7. In a recent comment the author suggests: "The obligations owed by the shipowner" are:
1) To exercise ordinary care in placing the ship and its appliances in such a condition that an experienced stevedore, aware of the normal dangers expected to arise in the ship's service, may, by the exercise of reasonable care, discharge his obligations in a workmanlike manner with reasonable safety to persons and property;
2) To provide reasonable warning of any hidden or latent dangers not usually or reasonably expected by an experienced stevedore, provided that the shipowner know of, or, with reasonable care under the circumstances, should have known of the danger and that it was danger such as the stevedore would normally encounter in the performance of his services; and
3) To refrain from materially burdening, delaying, or interfering with the

performance of the stevedoring operator in an unreasonable manner.
The use of a breach of any of these obligations as a measure of conduct sufficient to preclude recovery has gained favor in subsequent holdings, does not appear to conflict with any existing determination by the Supreme Court, and could provide reasonable content to the Weyerhaeuser principle.
It may be noted that a latent defect causing injury may interfere with indemnification in two ways. If the defect is within the knowledge of the shipowner and no warning is given, the shipowner may not be allowed to recover. However, the latent nature of a defect not within the knowledge of the shipowner will preclude the foreseeability requirement necessary to the liability of stevedores. Comment, The Ryan Doctrine: Present Stature and Future Development, 37 Tul.L. Rev. 786, 801 (1963).

said: "However, even if it was properly found that Clark (stevedore) by improper stowage breached its implied warranty of workmanlike service to McAllister (shipowner), a majority of the court thinks that there is no showing that this breach caused Reddick's injury * * * Under the general test of foreseeability applied to contractual liability, a breach must have been the cause of the injury. We think that in this case the latent defect in the board on the top of the crate was an intervening cause which broke any causal chain that might otherwise have existed." 258 F.2d at 300. Similarly, the stevedore's warranty of workmanlike service does not put him under the duty to discover defects in equipment furnished him by the shipowner, such as a rotten rope. Ignatyuk v. Tramp Chartering Corp., 2 Cir. 1957, 250 F.2d 198.

In these cases and in the instant case, the factfinder's evaluation of the shipowner's conduct involves a weighing process. Thus, in Hagans v. Farrell Lines, Inc., 3 Cir. 1956, 237 F.2d 477, it was contended that an interrogatory concerning the stevedore's asserted negligence was answered in a way that was inconsistent with the general verdict. In answer, the Court said: "We think it a necessary conclusion from the question addressed to the court by the jury, and the general verdict (against the shipowner and in favor of the stevedore), that the jury must also have concluded that the defective winch was a substantial cause of the accident, and that the negli-

gence of Lavina's (the stevedore's) employees was not a substantial cause of the accident."

Our task is not to decide whether the S. S. ARIZPA'S unseaworthiness was a sufficiently material breach of the shipowner's warranty to excuse Atlantic's breach of the stevedore's warranty. That is the jury's task. So, in Weyerhaeuser the Supreme Court observed:

"The evidence bearing on these issues—petitioner's (owner's) action in making the shelter on its ship available to respondent's employees in Boston although it apparently was unsafe, as well as respondent's (stevedores') continued use of the shelter for five days thereafter without inspection—was for jury consideration under appropriate instructions." 355 U.S. at 567, 78 S.Ct. at 441.

And see McNamara v. Weichsel Damp. A. G. Kiel, 2 Cir. 1961, 293 F.2d 900, 904; Moore-McCormack Lines, Inc. v. Maryland Ship Ceiling Co., 4 Cir. 1962, 311 F.2d 663.

Here the jury concluded that in spite of Atlantic's negligence, the defective roller beam assembly was the proximate cause of the accident and amounted to conduct on the part of the shipowner sufficient to preclude indemnification. We cannot say that the jury was confused or inconsistent or that the record fails to support the jury's finding.[8]

The judgment is affirmed.

8. Waterman alleges several other errors. Waterman attacks the admission of evidence that the upper guide rail was defective, because the evidence was based on an inspection several years after the accident. This error was not prejudicial, since there was substantial other evidence before the jury to support a verdict of unseaworthiness. At any rate the admission of this type of evidence was within the sound discretion of the trial judge. See McCormick, Evidence sec. 167 at 350; 2 Wigmore, Evidence (3rd ed.) sec. 437 at 414. Admiralty practice tends to admit evidence excludible in common law courts. American Cyanamid Co. v. China Union Lines, Ltd., 5 Cir., 1962, 306 F.2d

135. Thus, this Circuit recognizes the rule that subsequent events may accurately reflect earlier conditions. Avera v. Florida Towing Corp., 5 Cir. 1963, 322 F.2d 155, 162 & n. 12. A lapse of several years does stretch the rule, but not beyond the breaking point when the rule is applied to a durable object such as an upper guide rail.

Waterman also complains that the second special interrogatory was erroneous because it implied that an unseaworthiness of the vessel was a breach of contract and prevented recovery by Waterman. The jury's answer to the tenth interrogatory disposes of this contention.