COMPANIA ANONIMA VENEZOLANO
de NAVEGACION, Appellant,

v.

William H. MATTHEWS et al., Appellees.

No. 22220.

United States Court of Appeals
Fifth Circuit.

Jan. 31, 1967.

Rehearing Denied March 2, 1967.

Leon Sarpy, Paul A. Nalty, New Orleans, La., for respondent-appellant, Chaffe, McCall, Phillips, Burke, Toler & Hopkins, New Orleans, La., of counsel.

A. R. Christovich, Lillian M. Cohen, New Orleans, La., for respondent, Christovich & Kearney, New Orleans, La., of counsel.

Before GEWIN and AINSWORTH, Circuit Judges, and HUNTER, District Judge.

HUNTER, District Judge.

Matthews, a longshoreman, filed a libel in personam to recover damages for personal injuries. The defendant shipowner impleaded J. P. Florio and Company, Inc. for whom Matthews was working at the time of his injury. The trial judge's decision was for the plaintiff (longshoreman), against the shipowner, and in favor of the impleaded stevedore. The shipowner only appeals, assigning as error the district judge's findings that the vessel was unseaworthy; alternatively, the Court's failure to allow recovery over against the stevedore contractor under the Ryan rule; and in the further

alternative, for failure to find Matthews contributorily negligent.

The following facts, as found by the district court, were clearly established by the evidence:

## II.

■ The libellant was engaged in the stowage of cargo in one of the hatches of said vessel.

## III.

Libellant and his co-workers found, upon the removal of the hatch covers, a large quantity of loose dunnage which had come into port with the vessel. This dunnage was piled unevenly and loosely, about 2 feet to 4 feet high, and covered over with brown paper.

## IV.

Libellant and his co-workers requested that the dunnage be removed. These requests were transmitted by Florio employees to the vessel's mate in charge of stowing cargo. The mate ordered that the dunnage remain in the hold, and that libellant *and* his co-workers build cargo to the height of the dunnage and work over it. They were further ordered to build up to the height of the dunnage in the square of the hatch.

## V.

Libellant was required to stow cargo over the loosely piled paper covered dunnage, and to do so it was necessary that libellant walk over the paper covered dunnage. Libellant was unable to stow cargo as ordered without walking over and on the dunnage.

## VI.

While libellant and a co-worker carried cargo for stowage over the covered dunnage, as ordered, libellant's right foot and part of his right leg went through the paper covering into a concealed hole or separation in the loose dunnage. The hole or separation into which libellant fell was created by the loosely piled condition of the dunnage, was covered by paper, could not be seen by libellant and constituted a trap.

## VII.

Loosely piled and covered dunnage must be removed before stowage of cargo to assure a safe footing for longshoremen.

## VIII.

Eight witnesses and the libellant testified to the above facts, and not one witness contradicted their testimony.

## IX.

A qualified expert on seamanship testified without contradiction that the method employed by the respondent herein on the date of libellant's injury was unsafe.

## X.

J. P. Florio & Co. Inc. did not cause the condition that resulted in the accident and injury, and had no control over the vessel, the dunnage or paper covering over the dunnage, prior to the accident and injury.

## XI.

The presence of the loose, covered dunnage in the hold during loading operations, for which the vessel alone was responsible, rendered the vessel unseaworthy, and created an unsafe place for libellant to work. Libellant was injured as a proximate result of such unseaworthiness and unsafe condition.

## XII.

The unseaworthiness of the vessel and the failure of the respondent to provide libellant with a reasonably safe place to work were the sole and exclusive legal causes of the accident and libellant's resulting injury, no negligence being legally attributable to libellant.

Beaten on the facts, the shipowner turns hopefully to the law books, and contends under *Ryan* and *Italia* [1] the continued performance by the stevedore un-

1. Ryan Stevedoring Co., Inc. v. Pan-Atlantic SS Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Italia Societa, etc. v. Oregon Stevedoring Co., 1964, 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732.

der the conditions found to be existing is ample reason to hold the stevedore as a matter of law. The cited decisions are, on their facts, so different from the circumstances of our case that they have no persuasive value. *Ryan* held no more than the shipowner could recover over from the stevedoring company, by invoking the legal formula of warranty, where the unseaworthiness for which the shipowner is liable resulted from a breach of the stevedoring company's implied warranty of workmanlike service. In *Italia,* the stevedore had been hired to load and unload Italia's vessels and to supply the ordinary equipment necessary for those operations. The defective rope which created the condition of unseaworthiness on the vessel and rendered the shipowner liable to the stevedore's employee was supplied by the stevedore. The District Court denied indemnity. The Court of Appeals for the Ninth Circuit affirmed on the ground that a stevedore's implied warranty is not breached in the absence of a showing of negligence on his part. The Supreme Court reversed, holding that where the injury-producing defective equipment is furnished by and under the control of the stevedore, the shipowner could recover on the basis of a breach of the implied warranty of workmanlike service without proving actual negligence.

■■ We agree with the shipowner that his failure to have cleared the hold of excess dunnage or put it out of the way would not, per se, prevent the shipowner from recovering indemnity. Ordinarily, the failure of the stevedore to clear away faulty dunnage could result in a conclusion by the fact finder that it breached its warranty to load in a workmanlike manner. Mortenson v. A/S Glittre (2nd Cir., 1965), 348 F.2d 383. Here, the fixing of liability lies in the findings of fact. The libellant and his co-workers requested that the dunnage be removed.

These requests were transmitted to the vessel's mate in charge of stowing cargo, who insisted that the dunnage remain in the hold and that libellant and his co-workers work over it. It has been recognized that indemnity may and should be denied when the shipowner or those operating the vessel determined the conditions under which work was to be done and ordered the stevedore to proceed with the work under those conditions. Thompson v. Trent Maritime Company (3rd Cir., 1965), 353 F.2d 632; Moore-McCormack Lines, Inc. v. Maryland Ship Ceiling Co., (4th Cir., 1962), 311 F.2d 663; Hodgson v. Lloyd Brasileiro Patrimonio Nacional (3rd Cir., 1961), 294 F.2d 32; United States v. Harrison (9th Cir., 1957), 245 F.2d 911. There is no difficulty as to the law. When the Court found that the vessel determined the conditions under which work was to be done; that the hole into which Matthews fell was not readily apparent and constituted a trap; and that the stevedore had no part in all of this, then there was warrant for applying the Weyerhaeuser corollary to the *Ryan* doctrine of stevedore-shipowner indemnity and concluding that the shipowner's conduct is sufficient "to preclude recovery of indemnity." [2]

■ Our attention is directed towards a determination of whether the findings are sufficient in view of the court's failure to state the precise location aboard the ship where the accident happened. The nature and degree of exactness of the findings depend on the circumstances of the particular case. We think the findings here are ample to provide a basis for the decision. Kelley v. Everglades Drainage District, 319 U.S. 415, 63 S.Ct. 1141, 87 L.Ed. 1485; Weber v. McKee (5th Cir., 1954), 215 F.2d 447; United States of America v. Jacobs (5th Cir., 1962), 308 F.2d 906.

The judgment is affirmed.

2. Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491. The language quoted has been labeled by this court as the "Weyerhaeuser dictum." See Waterman Steamship Corporation v. David, 5 Cir., 353 F.2d 660.