**OLIN MATHIESON CHEMICAL COR-
PORATION et al., Plaintiffs,**

v.

**UNITED STEVEDORING DIVISION,
STATES MARINE LINES, INC.,
Defendant.**

Civ. A. No. 67–H–523.

United States District Court,
S. D. Texas,
Houston Division.

Aug. 28, 1969.

**1374**

B. D. McKinney, Baker, Botts, Shepherd & Coates, Houston, Tex., for plaintiffs.

Ben L. Reynolds, Royston, Rayzor & Cook, Houston, Tex., for defendant.

## MEMORANDUM OPINION

SEALS, District Judge.

This is an action by a shipowner, Olin Mathieson Chemical Corporation, and by Nilo Barge Lines, Inc., against a contracting stevedore company, United Stevedoring Division, States Marine Lines, Inc., to recover indemnity for breach of the stevedore's implied warranty of workmanlike service.

A longshoreman named Bedford Pitts was injured aboard an Olin barge during discharge operations undertaken by United Stevedoring in September of 1964. The shipowner has settled Pitts' lawsuit for negligence and unseaworthiness and now seeks indemnity under the doctrine of Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corporation, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

These issues having been tried before the court and the parties having agreed that jurisdiction is proper, the case is ripe for final disposition.

Olin Mathieson manufactures fertilizer at its Pasadena, Texas plant on the Houston Ship Channel. A primary ingredient is phosphate rock which is transported from Florida by Nilo Barge Lines, a wholly-owned Olin subsidiary. Nilo barge No. 702 docked at Olin's Pasadena facility on September 17, 1964 with its usual cargo of ore at about 7:00 a. m. The first longshore crew from United Stevedoring went aboard some twelve hours later, at about 7:00 o'clock in the evening, under the supervision of walking foreman Bedford Pitts. Discharge of the phosphate rock was commenced and the operation ran smoothly until about 2:00 a. m. when Pitts found it necessary to close one of the barge's huge hatchcovers. This was to be accomplished hydraulically by use of engines aboard the barge. As walking foreman, Pitts was the only person aboard authorized to operate these engines so he climbed down into the engine room, which was located amidship, for this express purpose. Several of the lights were out but Pitts had a flashlight and he testified by deposition that he saw oil all over the deck of the engine room. Despite the unsafe condition, Pitts went ahead with the starting procedure. He first started a small engine which built pressure to assist in starting the main engine. When the pressure was high enough, Pitts assumed the awkward position he had been taught for starting the main engine. Both arms were outstretched, one hand holding the throttle and the other hand on a switch. In this posture, he then had to come down very hard on a starter button with his right foot. On the second attempt the engine started throwing Pitts backwards. Both of his feet slipped on the oily surface and Pitts fell hard on his tailbone and back. Although he continued to work for sometime after the accident, it is clear that Pitts was severely injured by the fall.

█ It is this court's initial conclusion that the presence of oil on the engine room deck rendered the barge unseaworthy.

Olin asserts that Pitts' conduct was negligence amounting to a breach of the stevedore's warranty of workmanlike service. United contends that the accident was caused by the ship's unseaworthiness and that the shipowner should bear the burden of compensating Pitts for his injuries.

### I.

In Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corporation, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), the Supreme Court imposed on the contracting stevedore the now familiar "warranty of workmanlike service." The important feature of *Ryan* is that it based the implied warranty on the law of contracts, thereby requiring that an alleged breach be evaluated in terms of contractual duties and not in terms of traditional tort concepts.

This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product. The shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service.

*Id.* at 133–134, 76 S.Ct. at 237.

*Ryan* clearly established that the stevedore's obligation under its implied warranty amounts to a series of contractual duties which do not necessarily relate to concepts of fault.

■ The Fifth Circuit has interpreted Ryan's contractual duties to mean that a stevedore can be negligent and still not breach the warranty. Waterman Steamship Corp. v. David, 353 F.2d 660 (5th Cir. 1965). However, the stevedore's negligence—even the negligence of the employee who has been injured—will be taken into consideration in determining whether there has been a breach of the stevedore's contractual warranty. United States Lines Co. v. Williams, 365 F.2d 332 (5th Cir.1966); Lusich v. Bloomfield Steamship Co., 355 F.2d 770 (5th Cir. 1966).

In Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Company, 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964), the Supreme Court held that indemnity should be allowed when the stevedore furnished latently defective equipment for use aboard the vessel despite the fact that the stevedore knew nothing of the defect and could not be said to be negligent.

■ However, the courts have not clearly established the stevedore's contractual duties when defective equipment or dangerous conditions are the result of the ship's neglect. The stevedore has the duty under its warranty to make only a cursory inspection of vessel equipment, D/S Ove Skou v. Hebert, 365 F.2d 341 (5th Cir. 1966); T. Smith & Son, Inc. v. Skibs A/S Hassel, 362 F.2d 745 (5th Cir. 1966), but should he become aware of a dangerous situation, the course of action a longshoreman should take has not been clearly defined by the decisions which have considered the problem. The problem is a real one for neither the unseaworthiness of the ship nor the negligence of her crew will necessarily preclude indemnity. Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964); Lusich v. Bloomfield Steamship Co., 355 F.2d 770 (5th Cir. 1966). And even if the stevedore is using defective ship equipment he will still be responsible if workmanlike service is not rendered. Crumady v. The J. H. Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959).

■ The United States Court of Appeals for the Fifth Circuit has indicated that upon discovery of dangerous conditions that are readily repairable, the stevedore should refuse to continue working until the working place is made safe. In T. Smith & Son, Inc. v. Skibs A/S Hassel, 362 F.2d 745 (5th Cir. 1966) the court held that it was breach of the stevedores' warranty for them to work over a hatch with knowledge of an ill-fitting hatch board.

If the stevedore has knowledge of a defect it should correct it or require it to be corrected by the ship's officers. Smith v. Jugosalvenska Linijska Plovidea, 4th Cir. 1960, 278 F.2d 176; Santomarco v. United States, 2nd Cir. 1960, 277 F.2d 255, cert. den. American Stevedores, Inc., v. United States, 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed.2d 52. The defects in the hatch board in this case were known to several of Smith's employees who were members of the same gang as Duvernay, the injured longshoreman. * * * We cannot adopt Smith's theory that the shortness of these time intervals relieves it of the consequences of its warranty. We do not decide whether

or not the longshoremen of Smith should have repaired the defective hatch board. Perhaps their duty was to see that ship's personnel corrected the defect. We think it is clear that it was a breach of Smith's warranty for them to work over the hatch with knowledge of the dangerous condition.

Id. at 747.

The present case is not one involving the relative adequacy of the inspection of the ship's equipment undertaken by the stevedore. *See* CIA Maritima Del Nervion v. James J. Flanagan Shipping Corp., 308 F.2d 120 (5th Cir. 1962); Southern Stevedoring & Contracting Co. v. Hellenic Lines, Ltd., 388 F.2d 267 (5th Cir. 1968). Nor is it a case that turns on the time span between discovery of the hazard and the injury. See Calderola v. Cunard Steamship Co., 279 F.2d 475 (2d Cir. 1960). The evidence is clear that Pitts saw the film of oil on the engine room deck, and the fact that he had complained of this same condition aboard Nilo barges on previous occasions indicates that he appreciated the danger. Nevertheless, in the face of this realization he went ahead with his attempt to start the engines. There is no issue as to the manner in which he performed this job; the question is whether his decision to continue working under these circumstances constituted a breach of his warranty of workmanlike service since it "brought into play" the vessel's unseaworthy condition. *See* Crumady v. The J. H. Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959).

It is this court's finding that, pursuant to the principles of T. Smith & Son, Inc., v. Skibs A/S Hassel, supra, Pitts breached the stevedore's warranty of workmanlike service.

## II.

As a corollary to the *Ryan* doctrine the Supreme Court has also made it clear that the shipowner is not without obligations under its contractual relationship with the stevedore. This concept finds its roots in Weyerhaeuser Steamship Co.

v. Nacirema Operating Co., 355 U.S. 563, 567, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958) where the Court said that indemnity would not be allowed if the shipowner's conduct is "sufficient to preclude indemnity." Again, the Court clearly meant to employ the law of contracts and subsequent applications of the *Weyerhaeuser* "corollary" have done so. See Waterman Steamship Corp. v. David, 353 F.2d 660, 665 (5th Cir. 1965). *See generally*, Restatement of Contracts (First, §§ 295, 315).

The courts have encountered difficulty in determining what conduct by the shipowner will prevent indemnity. In Waterman Steamship Corp. v. David, 353 F.2d 660 (5th Cir. 1965) the Fifth Circuit adopted the approach of weighing the reciprocal duties owed by the parties to each other. This test was considered in Southern Stevedoring & Contracting Co. v. Hellenic Lines, Ltd., 388 F.2d 267 (5th Cir. 1968);

> (T)he trier of fact must weigh the substantiality of the fault of the shipowner against the breach of warranty by the stevedore to determine whether the former's conduct is "sufficient to preclude indemnity." *Waterman Steamship Corp. v. David*, supra.

> The rule which has been forged for application in this process is that only conduct on the part of the shipowner which prevents the stevedore's workmanlike performance is sufficient to preclude indemnity.

Id. at 271–272. *See also* D/S Ove Skou v. Hebert, 365 F.2d 341 (5th Cir. 1966); Waterman Steamship Corp. v. David, 353 F.2d 660 (5th Cir. 1965); Mortensen v. A/S Glittre, 348 F.2d 383 (2d Cir. 1965); Albanese v. N. V. Nederl Amerik Stoomv. Maats, 346 F.2d 481 (2d Cir. 1965).

In Compania Anonima Venezolano de Navegacion v. Matthews, 371 F.2d 971 (5th Cir. 1967) these principles were applied as follows:

> The libellant and his co-workers requested that the dunnage be removed. These requests were transmitted to the vessel's mate in charge of stowing

cargo, who insisted that the dunnage remain in the hold and that libellant and his co-workers work over it. It has been recognized that indemnity may and should be denied when the shipowner or those operating the vessel determined the conditions under which work was to be done and ordered the stevedore to proceed with the work under those conditions. Thompson v. Trent Maritime Company (3rd Cir., 1965), 353 F.2d 632; Moore-McCormack Lines, Inc. v. Maryland Ship Ceiling Co., (4th Cir., 1962), 311 F.2d 663; Hodgson v. Lloyd Brasileiro Patrimonio Nacional (3rd Cir., 1961), 294 F.2d 32; United States v. Harrison (9th Cir., 1957), 245 F.2d 911. There is no difficulty as to the law. When the Court found that the vessel determined the conditions under which work was to be done; that the hole into which Matthews fell was not readily apparent and constituted a trap; and that the stevedore had no part in all of this, then there was warrant for applying the Weyerhaeuser corollary to the Ryan doctrine of stevedore-shipowner indemnity and concluding that the shipowner's conduct is sufficient "to preclude recovery of indemnity."

*Id.* at 973.

This clearly was conduct by the vessel which prevented the proper performance of the stevedore's duties. However, these facts are somewhat different from those of the present case. Pitts' only act which could be termed a breach of the *Ryan* warranty was his decision to risk the obvious dangers of an oily, slippery deck surface and continue his work. So, can it be said that his proper course of action—to either remove the danger or see that the shipowner did so—was prevented by the actions of the ship?

First, the evidence clearly indicates that Olin was responsible for keeping the engine room clean and maintaining it as a safe place to work. Sam Moore, the District Representative for Nilo at the time of the accident, was in charge of loading and unloading vessels at the Pasadena facility, and he testified that it was his responsibility to maintain and clean the Nilo barges. Moore stated that the normal practice was to inspect the engine room as soon as a barge docked to see if the machinery was functioning properly and that if water or oil was encountered on the deck to have it cleaned. Moore testified that he considered it his duty to make sure the engine room was clean and that he did not expect the longshoremen to clean it themselves. James Wilson, Olin Marine Superintendent, also testified that it was not the job of the longshoremen to keep the engine room clean.

The evidence also shows that Nilo barge No. 702 arrived at about 7:00 a. m. but that the first longshore crew did not begin work until about 7:00 p. m. that evening. The barge rested at the Olin dock all day but the engine room was not cleaned.

When Pitts went below at approximately 2:00 a. m. the next morning there were no Olin or Nilo employees present at the facility. Moreover, it would have been impossible for Pitts and his crew to remove the oil from the engine room themselves because, according to Sam Moore's testimony, the mops and detergent necessary for cleaning were padlocked in a shed during the night.

Plaintiff argues further that Pitts could have covered the engine room deck with cardboard so as to absorb the oil and improve the footing as this was a normal practice. Pitts stated, however, that he had been instructed some months before not to use cardboard in barges for this purpose. This testimony was controverted by plaintiffs' witnesses but it is this court's finding that Pitts was instructed to not use the cardboard and that this is the reason he did not use it the night of the accident.

The evidence also indicates that on previous occasions, complaints had been registered concerning the condition of Nilo barge engine rooms. Pitts stated that he had made numerous complaints and this was confirmed by Olin's Marine Superintendent, James Wilson.

**1378**

The facts of this case set.it apart from the usual shipowner-stevedore indemnity situation. Since *Ryan*, the courts have leaned heavily on the principle that a stevedore's specialized skill and training in the field of loading and unloading ships under constantly varying conditions best prepares it to prevent injury to persons during stevedoring operations. The result has been that indemnity is granted in the majority of the cases.

In Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 324, 84 S.Ct. 748, 754, 11 L.Ed. 2d 732 (1964) the Supreme Court stated that "liability should fall upon the party best situated to adopt preventive measures and thereby to reduce the likelihood of injury."

It is this court's conclusion that plaintiffs occupied the best position under the circumstances to prevent this accident. Pitts was without the means at 2:00 o'clock in the morning to either request that plaintiffs' employees clean the engine room or to do so himself. On the other hand, plaintiffs either knew or should have known from past experience that a barge of the "seven-hundred series" which had just completed a voyage across the Gulf of Mexico was likely to have salt water and oil in its engine room. Having been charged with this knowledge and with the responsibility for remedying any such conditions and having failed to perform its duty during the twelve hours before Pitts' crew came aboard, this court is of the opinion that, pursuant to the principles of *Weyerhaeuser*, plaintiffs did not fulfill the obligations which had been established by the custom and practice between plaintiffs and defendant. Waterman Steamship Corp. v. David, 353 F.2d 660 (5th Cir. 1965).

It follows that indemnity should be denied.

By stipulation of the parties herein, judgment will also be entered against plaintiffs in favor of Texas Employers' Insurance Association for the sum of Eleven Thousand, Seven Hundred Fifty-two and 27/100 Dollars ($11,752.27)

with interest at 6% per annum from October 1, 1968 until paid.

Costs will be taxed against plaintiffs.

Defendant will prepare a final judgment not inconsistent with this Memorandum Opinion approved as to form by plaintiffs within ten days.

This constitutes Findings of Fact and Conclusions of Law.