**SOUTHERN STEVEDORING & CONTRACTING COMPANY, Appellant,**

v.

**HELLENIC LINES, LIMITED, Owners of the M/V HELLENIC LAUREL, her engines, etc., Appellee.**

No. 24277.

United States Court of Appeals
Fifth Circuit.

Jan. 23, 1968.

---

John K. Meyer, Hinds & Meyer, Houston, Tex., for appellant.

Charles D. Kennedy, Houston, Tex., Royston, Rayzor & Cook, David C. Redford, Houston, Tex., of counsel, for Hellenic Lines, Limited.

Before WISDOM and GOLDBERG, Circuit Judges, and SEALS, District Judge.

GOLDBERG, Circuit Judge:

On December 16, 1961, a seismic drilling truck routed to Sudan, Africa, was dropped and damaged while being loaded aboard the M/V Hellenic Laurel. The parties below, Southern Stevedoring and Contracting Company ("Southern") and Hellenic Lines, Limited, ("Hellenic"), are contesting ultimate liability for the damages. As a preliminary to the con-

test, Southern and Hellenic each paid the truck owner, Agip Mineraria, $3,900.00 in full settlement of its claim, reserving to each all rights and claims inter se.

Southern was under contract with Hellenic to load and discharge all of the latter's vessels at the port of Houston. On December 16, 1961, pursuant to such contract, the M/V Hellenic Laurel (owned by Hellenic) was being loaded with general cargo and with two seismic drilling trucks weighing approximately eight tons each. The loading of the general cargo, in light drafts, proceeded without incident by the use of two boom arrangements, including a five-ton swivel hook which was standard for such weights. When the time came to lift the trucks, both parties realized that different arrangements would have to be made. Southern's superintendent Kincaid and walking foreman Nelius, and Hellenic's chief mate and port captain Calegaras decided that a four-fixed boom "Frisco" rig would be used. The ship's personnel, acting on this decision, arranged and affixed the gear, using the same five-ton weight swivel hook. When the longshoremen got ready to lift the first truck, they found the ship's equipment rigged in the "Frisco" fashion, and began the lift using the five-ton hook which was affixed. As the operation began, the first seismic drilling truck was loaded successfully. However, when the longshoremen swung the second truck on board, the upper swivel ring on the swivel hook holding the lift broke by separating at its weld. The truck fell to the deck and was damaged, giving rise to the instant action.

Agip Mineraria brought suit against the M/V Hellenic Laurel, Hellenic, and Southern for damages to the truck and costs of the suit. Prior to trial, Southern and Hellenic each contributed $3,900.-00 to settle for $7,800.00 the claim of Mineraria, and the main action was dismissed. This settlement was concluded under an agreement between the two defendants reserving to each party all existing rights and claims against the other. Subsequently, Southern and Hellenic each filed a cross action against the other for indemnity of its portion of the settlement, plus costs stipulated to be $1,500.00 for each party.

The District Court found as matters of fact: (a) that the swivel hook which failed under the eight-ton load was undersized for the work at hand in that it had a safe work load capacity of only five tons; (b) that the swivel hook assembly had stamped upon it an indicated safe work load of five tons which would —or should—have been obvious to the stevedoring personnel had they made a close visual inspection of the gear in question; (c) that five-ton cargo hooks made of low carbon steel (the type used aboard the M/V Hellenic Laurel and customarily used aboard merchant vessels) are visibly much smaller than ten-ton hooks of the same type; (d) that during the performance of the casual, cursory inspection of the gear made by the stevedoring personnel, the very size of the swivel hook should have placed a competent stevedore on notice of its inadequacy to handle an eight-ton load. The District Court concluded that Southern was negligent in failing to conduct a closer visual inspection of the swivel hook to determine its safe workload capacity after having been placed on notice by the hook's size of its probable inadequacy and that this negligence constituted a proximate cause of the accident. The Court also found that, aside from its being undersized to handle an eight-ton lift, the swivel in question contained a latently defective weld which was not discoverable by visual inspection and which was not known to either party. It concluded that this defect constituted unseaworthiness of the vessel and that this too was a proximate cause of the accident.

On the basis of these fact findings, the District Court held (1) that Southern's negligence in failing to conduct a closer visual inspection after having been placed on notice constituted a breach of Southern's warranty of safe and workmanlike service; and (2) that no conduct of Hellenic precluded indem-

nity, since Southern's negligence brought the unseaworthines of the vessel into play. Crumady v. Joachin, Hendrik Fisser 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L. Ed.2d 413. The District Court ordered Southern to indemnify Hellenic for the amount claimed. Southern's appeal attacks certain of the trial court's findings of fact and its determination that Hellenic's conduct was not sufficient to preclude indemnity. We affirm the judgment of the trial court on the basis of its findings of fact.

■ I. It is well established that a stevedore is under a contractual duty of workmanlike performance. In Italia Societa, etc. v. Oregon Stevedoring Co., 1964, 376 U.S. 315, 321, 84 S.Ct. 748, 752, 11 L.Ed.2d 732, 739, the Supreme Court stated:

> "[T]he description of the stevedore's obligation as one of performance with reasonable safety is not a reference to the reasonable man test pertaining to negligence, but a delineation of the scope of the stevedore's implied contractual duties."

See also Ryan Stevedoring Co. v. Pan Atlantic S. S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491; Crumady v. Joachim Hendrik Fisser, supra; Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318. This Court has repeatedly held that the question of whether a stevedore was negligent so as to breach his warranty of workmanlike performance is a question of fact to be determined by the trier of fact. Cia Maritima Del Nervion v. James J. Flanagan Shipping Corp., Stevedore Division, 5 Cir. 1962, 308 F.2d 120, 123; D/S Ove Skou v. Hebert, 5 Cir. 1966, 365 F.2d 341. The decision of the trier of fact cannot be overturned unless it is clearly erroneous and manifestly against the weight of the evidence. Chaney v. City of Galveston, 5 Cir. 1966, 368 F.2d 774; McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20; Cia

Maritima Del Nervion v. James J. Flanagan Shipping Corp., 5 Cir. 1962, 308 F.2d 120. In McAllister v. United States, id., 348 U.S. at 20, 75 S.Ct. at 8, the Supreme Court said:

> "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed,' United States v. Oregon State Medical Society, 343 U.S. 326, 339, 72 S.Ct. 690, 698, 96 L.Ed. 978, [988] * * * [citations omitted]."

■ II. A stevedore's use of defective or inadequate equipment after he has notice of such defect or inadequacy allows indemnity for damages over against the stevedore. T. Smith & Son, Inc. v. Skibs A/S Hassel, 5 Cir. 1966, 362 F.2d 745; Smith v. Jugosalvenska Linijska Plovidea, 4 Cir. 1960, 278 F.2d 176; Santomarco v. United States, 2 Cir. 1960, 277 F.2d 255; D/S Ove Skou v. Hebert, supra, on the basis that the stevedore has breached his warranty of workmanlike performance. Ryan Stevedoring v. Pan-Atlantic S.S. Corp., supra; Weyerhaeuser S.S. Co. v. Nacirema Operating Co., supra. Southern argues that the lower court "went wrong on the law" in that it believed that "it was incumbent upon appellant to make a *close* inspection of the gear selected and rigged for use by the ship's personnel." However, Southern does admit that it was under the duty to make at least a reasonable, if only cursory, inspection of the equipment furnished by Hellenic. See Ignatyuk v. Tramp Chartering Corp., 2 Cir. 1957, 250 F.2d 198, 201; D'Amico v. Lloyd Brasileiro Patrinonic Nationale, 2 Cir. 1965, 354 F.2d 33, 35; Cia Maritima Del Nervion v. James J. Flanagan Shipping Corp., supra; D/S Ove Skou v. Hebert, supra. A necessary corollary to this admission is that if it is apparent upon a cursory inspection of the ship's equipment that it may not be adequate for the purpose intended, the stevedore should take steps to make a closer inspection of the equip-

ment to ensure its fitness. "In short, *he must not assume* that a safe condition exists when he has notice that such may not be the case." Smith v. Jugosalvenska Linijska Plovidea, supra, 278 F.2d at 181. To hold otherwise would mean that there was no purpose in such a cursory inspection, and that the stevedore could ignore open and obvious defects in the ship's equipment. The court's finding that Southern Stevedoring had the duty to conduct a closer visual inspection was necessarily based on its prior finding that appellant was "placed on notice, constructive if not actual, of its [the hook's] probable inadequacy by casual inspection."

■ There is ample support in the record for the trial court's findings that it was a five-ton swivel hook which failed, that this hook was a type visibly much smaller than its ten-ton counterpart, that such difference should have been obvious to Southern upon a cursory, visual inspection, and that the stamped markings on the swivel produced in court indicating a five-ton safe work load were clearly understandable upon a subsequent close visual inspection. Southern introduced at the trial exhibits of five-ton and ten-ton swivel hooks which were roughly comparable in size, but the District Court, basing its conclusion on expert testimony, specifically found that these were of a high carbon nonmalleable type not customarily used aboard merchant vessels since they were much more liable to break in cold weather than the low carbon, malleable type of swivel hook customarily used aboard merchant vessels and used aboard the M/V Hellenic Laurel. Likewise, the testimony of experts for both Southern and Hellenic was to the effect that the diameter of the hook part of a ten-ton swivel hook of low carbon steel is at least three-fourths of an inch larger in diameter than a five-ton swivel hook of like type, and the gang foreman of Southern testified that the hook is at least two inches longer. Both the walking foreman and the superintendent of Southern testified that they knew that

both the hook and the swivel on the swivel hook have their safe work load capacity stamped upon them, and the port captain of Hellenic testified that the cargo hook in this case had its capacity stamped upon it. The record shows that the swivel of the defective swivel hook, introduced into evidence, had its five-ton safe work load capacity clearly stamped upon it, and was the same low carbon malleable type as that the trial court found the hook itself to be. The hook itself, which separated at the swivel, was not introduced into evidence, but the record amply supports the conclusion that it in itself was a five-ton cargo hook.

■ III. The District Court held that, since it was the negligence of Southern that brought the unseaworthiness of the vessel into play, such unseaworthiness did not constitute conduct on the part of the ship sufficient to preclude recovery, and Hellenic was not guilty of any other conduct sufficent to preclude recovery of indemnity. Whether or not the total conduct of Hellenic was sufficient to preclude recovery is determined by the law of contract, Weyerhaeuser Steamship Co. v. Nacirema Operating Co., supra; Waterman Steamship Corporation v. David, 5 Cir. 1965, 353 F.2d 660; Cf. Restatement of Contracts (First), Sections 295, 315; in that such conduct, to preclude indemnity, must be sufficient to bar the enforcement of the contract. Calmar Steamship Corporation v. Nacirema Operating Co., 4 Cir. 1959, 266 F.2d 79. The vessel's unseaworthiness, although a proximate cause of the accident, is not in itself conduct necessarily sufficient to preclude recovery. T. Smith & Son, Inc. v. Skibs A/S Hassel, supra. See also Calmar Steamship Corporation v. Nacirema Operating Co., supra; Lusich v. Bloomfield Steamship Co., 5 Cir. 1966, 355 F.2d 770; D/S Ove Skou v. Hebert, supra. Without entering the thicket of primary and secondary, or active and passive negligence, Weyerhaeuser Steamship Co. v. Nacirema Operating Co., supra, the trier of fact must weigh the substantiality

of the fault of the shipowner against the breach of warranty by the stevedore to determine whether the former's conduct is "sufficient to preclude indemnity." Waterman Steamship Corp. v. David, supra.

The rule which has been forged for application in this process is that only conduct on the part of the shipowner which prevents the stevedore's workmanlike performance is sufficient to preclude indemnity. Albanese v. N.V. Nederl Amerik Stoomv.Maats, 2 Cir. 1965, 346 F.2d 481, reversed on other grounds 382 U.S. 283, 86 S.Ct. 429, 15 L.Ed.2d 327 (1965); Mortensen v. A/S Glittre, 2 Cir. 1965, 348 F.2d 383; Waterman Steamship Corp. v. David, supra; D/S Ove Skou v. Hebert, supra. However, in our case, it was not the unseaworthiness of the ship which prevented Southern's workmanlike performance, but rather the breach of warranty by Southern which brought into play the unseaworthiness of the vessel to produce the accident. The trial court found that the unseaworthiness of the vessel should never have been brought into play and that if Southern had adhered to its warranty of workmanlike performance, the latent defect in the swivel hook would not have been tested.

The fact situation in this case is analogous to that in Crumady v. Joachim Hendrik Fisser, supra. The gear in that case was fit for use within certain limits, but was turned over to the stevedore by the shipowner in an unseaworthy condition for the job at hand. The use of the gear in that condition by the stevedore was held to be a breach of his warranty of workmanlike performance, and the shipowner's conduct was not sufficient to preclude indemnity since the stevedore had brought into play the unseaworthy condition. In that case, the unseaworthy condition of the ship's equipment was apparent; in our case, the inadequacy of the swivel hook due to its size was obvious. The distinction has no bearing on whether Southern should have used the ship's equipment.

Weighing and sifting is for the trial court. In our circumscribed review we must be confronted with clearly erroneous findings or conclusions in order to reverse. This heavy burden appellant has not discharged. Our decision is in accord with the policy that that party should bear the loss whose default caused the damage and who was in the best position to minimize the risk to crew and cargo. Reed v. S.S. Yaka, 1963, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448; Italia Societa v. Oregon Stevedoring Co., supra.

Affirmed.