Horace DELANEUVILLE, Jr.

v.

O. Ditlev SIMONSEN, Jr., Respondent-Appellant,

v.

KAISER ALUMINUM & CHEMICAL CORPORATION, Third-Party Defendant-Appellee.

No. 29233.

United States Court of Appeals, Fifth Circuit.

Jan. 25, 1971.

Rehearing Denied March 5, 1971.

Benjamin W. Yancey, James L. Schupp, Jr., New Orleans, La., for respondent-appellant; Terriberry, Carroll, Yancey & Farrell, New Orleans, La., of counsel.

F. W. Middleton, Jr., of Taylor, Porter, Brooks & Phillips, Baton Rouge, La., for appellee, Kaiser Aluminum & Chemical Corp.

Before JOHN R. BROWN, Chief Judge, and WISDOM and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This is another incidence of Admiralty's eternal triangle—longshoreman, shipowner, stevedore—in which injured longshoreman—as a Sieracki-Ryan-Yaka pseudo seaman—sues shipowner for damages suffered by reason of unseaworthiness, followed by shipowner's claim against stevedore for indemnification on the ground that stevedore breached its WWLP.[1]

The immediate issue is whether the District Court erred in failing to award Shipowner indemnity over against Stevedore, in the amount that Shipowner paid in damages to Longshoreman.[2] The answer turns primarily upon whether it was clearly erroneous for the trial Judge to have found that Stevedore did not breach the WWLP because the defect in the equipment, which was the cause of Longshoreman's injury, was a *latent* defect not reasonably detectable. Tied into this are related questions of the Stevedore's duty of inspection and immediate responsibility for compliance with federally mandated safety regulations. We hold that the crucial fact findings were not clearly erroneous under F.R.Civ.P. 52(a), and we affirm the judgment of the Court below.

## I. Background—A Thirteenth Rung

In this typical third-party, indemnity case, Longshoreman (Horace Delaneuville, Jr.) sued Shipowner for damages caused by Shipowner's unseaworthy vessel. Shipowner then sued Stevedore (Kaiser Aluminum & Chemical Corporation) for indemnity because of breach of Stevedore's WWLP. The case was tried to the District Court sitting in Admiralty without a jury.

At the close of the case the Judge concluded (a) that with regard to Longshoreman and Shipowner, (i) Longshoreman's injuries were caused by the unseaworthiness of the ship, and (ii) accordingly Longshoreman was entitled to recover damages from Shipowner. The Court determined (b) with regard to Stevedore and Shipowner, (i) the defect in the equipment rendering the ship unseaworthy was a *latent* defect and consequently (ii) Stevedore did not breach its WWLP, thus (iii) affording Shipowner no legal ground upon which to demand indemnity. Shipowner appeals only from that part of the judgment that de-

---

1. Warranty of workmanlike performance, see D/S Ove Skou v. Hebert, 5 Cir., 1966, 365 F.2d 341, at 345, 1966 A.M.C. 2223, at 2226; Grigsby v. Coastal Marine Service of Texas, Inc., 5 Cir., 1969, 412 F.2d 1011, 1969 A.M.C. 1513, cert. dism'd., Fidelity & Cas. Co. v. Grigsby, 396 U.S. 1033, 90 S.Ct. 612, 24 L.Ed.2d 531.

2. Judgment was rendered for $43,559.00 against Shipowner in favor of Longshoreman for damages as a result of unseaworthiness. Shipowner acquiesced in this holding by satisfying the judgment.

nies him indemnification from Stevedore.

## A. Into The Hold

On August 3, 1968 Stevedore was in charge of removing a cargo of bauxite from the No. 5 hold of M/S Vigan. In order to properly accomplish this task it was necessary to operate a bulldozer inside the hold of the vessel. This was Longshoreman's job, and he was proceeding to it at the time that he sustained his injury. The No. 5 hold has a steel strengthener built into it which begins approximately 35 to 45 feet below the weather deck, or approximately 12 to 20 feet above the tank top. This strengthener is about twelve and one-half feet in length, and runs at an angle along the side of the ship. To enable one to gain ingress into the No. 5 hold there is a permanent, steel ladder that runs from the main deck down to the strengthener, and from the strengthener there is a removable aluminum ladder that spans the remaining twelve feet or so to the floor of the hold. When in use the removable ladder is held in place by hooks permanently fastened to the top end of each side of the ladder which fit over a steel bracket welded to the strengthener. The bar, described as "one continuous piece of metal", about eighteen inches wide, is welded to the strengthener in "two places". The legs of the bar extend out about five and one-half inches. This leaves enough space between it and the wall of the ship for the hooks of the ladder to fit over the bar without difficulty. In effect the metal bar is similar to an additional rung of the permanent ladder, being located approximately twelve inches below the end of it. The two steel hooks are welded to the top end of each side of the ladder. These hooks are designed to hang over the bar in order to secure the removable ladder to the ship.[3]

The accident did not occur on Longshoreman's first descent into the hold that day. Sometime prior to the accident Longshoreman descended into the hold, worked down there, and then ascended to the main deck. All of this transpired without incident of any kind. However—as the Court impliedly held on evidence which warranted credit—on Longshoreman's second descent into the hold the hooks holding the temporary ladder slid sideways along the bar, dislodged completely from it, and then ladder and Longshoreman both toppled to the floor of the hold.

## B. From the Depths

Although badly shaken, Longshoreman was nevertheless able to pick up the aluminum ladder and place it against the bulkhead at a point immediately below the end of the permanent ladder. He then "carefully climbed up the ladder" and emerged from the depths (of the hold) onto the main deck.

On his climb back up the ladder he had noticed that the "bracket was broken", that "the right hand side going up was broken". Longshoreman, in testifying about his observation, stated: "The bar was broken across, and it was flat in, the peice from the wall to where the bar was bent down flat, and the bar was also bent in a little * * * the bar itself was bent in * * * [a] slight bend in the bar itself, a light curve in the bar * * * [which] curved in, towards the wall." Longshoreman testified further that the bar did not contain an *actual* break, but that the break was in "the bar that was coming from the wall * * * [that part] was broken

---

**3.** While there is cargo in the hold this removable ladder is "usually kept in the forecastle." Once the hold has been nearly, or completely discharged, and Stevedore is ready to have the temporary ladder put in place, it alerts one of the mates of M/S Vigan who, in turn, instructs the crew to lower the ladder into the hold. The ladder is lowered and one of the crew climbs down the permanent ladder and places the iron hooks over the bar. It is impossible to attach the temporary ladder to the metal bar by merely lowering the ladder onto the bar from the weatherdeck.

and bent, mashed in, bent in." Although the testimony was confusing because Longshoreman attempted to describe what had taken place, the trial Court was entitled to conclude impliedly that with the "leg" part loosened from the bulkhead or the main hangar portion of the bracket, there was nothing to keep the ladder hooks from slipping off the bracket.[4]

## II. What Duty? What Breach of WWLP?

As it turns out, on the facts previously summarized, the Judge's conclusions practically eliminate any controversy over, or the existence of, any significant legal principles. He declared quite positively that (i) the ladder fell to the deck, (ii) the bracket device broke, and (iii) the defect was latent.[5]

■ This puts a heavy burden on Shipowner since the question of whether a stevedore has breached its WWLP is a question of fact to be determined by the trier of fact. Southern Stevedoring and Contracting Company v. Hellenic Lines Limited, 5 Cir., 1968, 388 F.2d 267, 1968 A.M.C. 573; D/S Ove Skou v. Hebert, 5 Cir., 1966, 365 F.2d 341, 1966 A.M.C. 2223, cert. denied, Southern Stevedoring & Contracting Co. v. D/S Ove Skou, 400 U.S. 902, 91 S.Ct. 139, 27 L.Ed.2d 139.

4. On examination by counsel for third party Defendant-Appellee Longshoreman gave a full description of the appearance of the longitudinal bar, and of the ladder-hook-fittings as they appeared *after* the accident had occurred:

\* \* \* \* \*

"Q I see. Now, was there any actual break? Do you understand what I mean when I talk about a break? Something that came loose and was not connected. Was there any break in any portion of this bar?

A Not the bar that ran across; the bar that was coming from the wall.

Q The part that came from the wall was broken?

A Yes, sir, it was broken and bent, mashed in, bent in.

Q To be sure that I understand you gitudinal section was open on one end?

A Yes, sir.

Q And as I understand it, the loncorrectly, if you had put a hook over the longitudinal bar, it would have slid off the end where there was no longer any piece leading into the bulkhead?

A Yes, sir."

\* \* \* \* \*

This was not significantly weakened on examination by counsel for Shipowner:

\* \* \* \* \*

"Q Mr. Delaneuville, are you telling us that you put your weight on this ladder and you felt it move and you didn't check to see the hooks, to see that it was hooked properly on the bracket or bar?

A No, sir. When I got down there to where the hooks were on the temporary ladder, I had my hands on the first rung of the ladder that was right below the hooks, that is when the ladder started to shift and fall over. With the weight of my body I tried to push the ladder back, and I couldn't do it. I tried again and I still couldn't do it. I reached out to grab the permanent ladder, but the ladder was too far gone and I just went down with the ladder."

5. The Judge, by bench pronouncements made directly into the record, which pronouncements are as much a judicial declaration as those made subsequently in the quiet of his chambers, made precise conclusions: "[i] The preponderance of the evidence certainly shows—if we go on the preponderance which the law requires me to do—certainly shows that the ladder fell to the deck; \* \* \* [ii] that the evidence further shows that the bar that has been referred to which was attached or welded to the outer extremity of the strengthener, was \* \* \* broken \* \* \*. [iii] Insofar as Kaiser is concerned, I see no liability on the part of Kaiser Aluminum in connection with this case [and] [iv] All of the testimony in this case shows—all the testimony shows that those who looked at this ladder thought it was securely fastened and safe for use—everybody from the plaintiff to the First Officer of the ship on down thought the ladder was safe. So whatever defect there was—and there had to be a defect for the ladder to fall —whatever defect there was was a latent defect which I don't think this evidence shows could reasonably have been found by Kaiser anyway."

Subsequently the Judge, in ruling on post trial motions, made a Minute Entry in which he adopted this transcript as the Court's findings of fact and conclusions of law.

The decision of the trier of fact cannot be overturned unless it is clearly erroneous.[6] F.R.Civ.P. 52(a); McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20, 1954 A.M.C. 1999; Cia Maritima Del Nervion v. James J. Flanagan Shipping Corporation, 5 Cir., 1962, 308 F.2d 120.

It is the shipowner's obligation to furnish a seaworthy vessel, not the stevedore's initial duty to determine whether the shipowner has complied with the demands made by the law. Accordingly the stevedore does not have to conduct the sort of detailed inspection as would a shipowner and, conversely, the duty of inspection is to follow up adequately on deficiencies which are either obvious or revealed by a cursory examination.[7] The trial Judge was entitled to credit testimony implying that neither condition existed. This would include Longshoreman's testimony that on each of the three times he passed directly in front of the bar upon which the hooks of the temporary ladder were attached, at a distance of approximately 16 inches, he noticed nothing unusual. Added to this was the negative testimony from Stevedore's foreman and from the ship's Chief Officer.

The finding that the bracket device broke makes Shipowner's position both formidable and awkward. To succeed at this juncture he must virtually show that the Judge was compelled to find that a cursory observation by Stevedore[8] would have revealed the break in the bracket or, if not yet complete, the obvious warning signs of an imminent fracture.

Thus the case is but a repetition of our earlier declaration that "Where there has been no notice of a damaged or faulty ladder, the courts have not implied a hypothetical duty to inspect, and the stevedore has not been required to indemnify the shipowner." Cia Maritima Del Nervion v. James J. Flanagan Shipping Corp., *supra*, at 120, 124. See also T. Smith & Son, Inc. v. Skibs A/S Hassel, 5 Cir., 1966, 362 F.2d 745, 1966 A.M.C. 1700; Vaccaro v. Alcoa Steamship Company, 2 Cir., 1968, 405 F.2d 1133. It is true that once a stevedore is placed on notice that a defective condition exists aboard ship, it must take immediate, affirmative action to correct it, and to make the ship safe for its intended use. Santomarco v. United States, 2 Cir., 1960, 277 F.2d 255, 1960 A.M.C. 1089; Smith v. Jugosalvenska Linijska Plovidea, 4 Cir., 1960, 278 F.2d 176, 1960 A.M.C. 841. But this is not met for want of (i) notice or constructive notice[9] and (ii) an opportunity for correction. For whatever may be the status of "instantaneous un-

6. We stated the theory underlying this rule as follows:

"a * * * trial of a hotly contested, sharply disputed case is the task of a trial court. * * * [and] Whether formulated in the mold of 'clearly erroneous' or- followed intuitively as a measure, reviewing courts, even in admiralty * * * should be slow to overturn fact decisions made by the judge before whom the facts are annealed through the hammering, heating process of vigorous, running advocacy. Ohio Barge Line v. Oil Transport Company, 5 Cir., 1960, 280 F.2d 448, 449." 365 F.2d 341, 346.

7. See, e. g., Southern Stevedoring & Contract Co. v. Hellenic Lines, Ltd., 5 Cir., 1968, 388 F.2d 267. 1968 A.M.C. 573; Cia Maritima Del Nervion v. James J.

Flanagan Ship Corp., 5 Cir., 1962, 308 F.2d 125; Waterman S. S. Corp. v. David, 5 Cir., 1965, 353 F.2d 660, cert. denied, 1965, 384 U.S. 972, 86 S.Ct. 1863, 16 L.Ed.2d 683.

8. This would, of course, include Longshoreman as its agent. See D/S Ove Skou v. Hebert, 5 Cir., 1966, 365 F.2d 341, 1966 A.M.C. 2233, cert. denied, Southern Stevedoring & Contracting Co. v. D/S Ove Skou, 400 U.S. 902, 91 S.Ct. 139, 27 L.Ed.2d 139; Frasca v. S/S Safina E. Ismail, 4 Cir., 1969, 413 F.2d 259, 1969 A.M.C. 1315.

9. We agree with the Court in his refusal to receive or credit the accident investigation report (on the grounds that it is single, double, or triple hearsay) that suggests Longshoreman was aware of deficiencies in the temporary ladder or bar on his first trip down the ladder.

seaworthiness" *vis-a-vis* Shipowner and Sieracki seaman [10] in order for the stevedore to be held liable for indemnity for an accident that occurs subsequent to its discovery of the defective equipment, the stevedore must have sufficient time between the discovery and the accident to correct the defect. See Orlando v. Prudential Steamship Corp., 2 Cir., 1963, 313 F.2d 822. Nor are the cases [11] so heavily pressed by Shipowner contrary to our holding.

Shipowner's contention that indemnity is compelled because of Stevedore's violation of § 1504.25(f) of the Health and Safety Regulations [12] likewise stands on these decisive findings.

We have given the fullest sweep to these regulations as mandating a standard of safety to be met by a stevedore. Manning v. M/V "Sea Road", 5 Cir., 1969, 417 F.2d 603; Grigsby v. Coastal Marine Service of Texas, Inc., 5 Cir., 1969, 412 F.2d 1011, 1969 A.M.C. 1513; Marshall v. Isthmian Lines, Inc., 5 Cir., 1964, 334 F.2d 131, 1964 A.M.C. 1686. But they are to be fairly construed and applied in the light of each record. The provision in C.F.R. to which Shipowner refers provides that portable ladders "be of adequate strength and lashed, blocked, *or otherwise secured* against shifting or slipping." (Emphasis ours). Here, on the findings, the accident occurred, not because the hooking device was inherently defective or inadequate, but rather because it broke allowing the well-hooked ladder to slip off the bracket. There was no proof offered—and certainly none from Shipowner—that

had the bracket not been defective the hooks would have been inadequate. Granting that Stevedore—in addition to Shipowner—had an affirmative duty to see that the portable ladder was "lashed, blocked, or otherwise secured" the Court was entitled to conclude that had the bracket not been defective, the ladder was "otherwise secured" by the bracket device and ladder hooks.

Indemnity was denied, not because the conduct of Shipowner precluded enforcement, but rather because Stevedore did not breach its WWLP. This result is faithful to Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 1958, 355 U. S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491, 1958 A.M.C. 501.

Affirmed.

---

10. See, e. g., Antoine v. Lake Charles Stevedores, Inc., 5 Cir., 1967, 376 F.2d 443, 1967 A.M.C. 2085, cert. denied. 389 U.S. 869, 88 S.Ct. 145, 19 L.Ed.2d 146; Robichaux v. Kerr McGee Oil Industries, Inc., 5 Cir., 1967, 376 F.2d 447, 1967 A.M.C. 2082; Taylor v. S. S. Helen Lykes, 5 Cir., 1968, 402 F.2d 777, 1968 A.M.C. 422.

11. See, e. g., Southern Stevedoring & Contracting Co. y. Hellenic Lines, Ltd., 5 Cir., 1968, 388 F.2d 267, 1968 A.M.C. 573; Drago v. A/S Inger, E.D.N.Y., 1961, 194 F.Supp. 398; Smith v. Jugo-

salvenska Linijska Plovidea, 4 Cir., 1960, 278 F.2d 176, 1960 A.M.C. 841; Lattin v. Flota Mercante Grancolombiana, S. A., S.D.Tex., 1967, 290 F.Supp. 893.

12. The pertinent provision states:
"(f) Portable straight ladders used by employees for any purpose not otherwise specifically covered by this part shall be of adequate strength and lashed, blocked, or otherwise secured against shifting or slipping."
29 C.F.R. Section 1504.25(f).