Harry GRAYSON, Plaintiff,

v.

MANAGEMENT & SHIPPING TRANS-PORT, INC., et al., Defendants.

CLAIRSHIP NAVIGATION CORPORA-TION (owner and operator of the SS Eldorado), Third-Party Plaintiff,

v.

COOPER STEVEDORING COMPANY, Incorporated, Third-Party Defendant.

Civ. A. No. 5465–69–T.

United States District Court,
S. D. Alabama, S. D.
July 28, 1971.

---

Ross Diamond, III, Diamond & Lattof, Mobile, Ala., for plaintiff.

Oliver Latour, Hamilton, Butler, Riddick & Latour, Mobile, Ala., for defendants.

Johnstone, Adams, May, Howard & Hill, Alex Howard, Jr., Mobile, Ala., for third-party defendant.

DANIEL HOLCOMBE THOMAS, Chief Judge.

The above-styled case was regularly set down for trial on March 5, 1971, and after hearing and considering the evidence and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. Harry Grayson, the plaintiff, was a longshoreman employed by Cooper Stevedoring Company, Inc. He was injured aboard the SS ELDORADO on November 22, 1968, in the Port of Mobile, Alabama. At the time of the accident, Cooper was engaged in loading a cargo of bundled tin sheets aboard the ELDORADO.

2. The cargo was loaded into the holds by lowering the bundles fore and aft to within 2 to 3 feet of the deck. The winchman suspended the load at that heighth where four longshoremen would manually rotate the bundle so that

it could be landed on targets (two parallel 4x4 timbers). Once landed on the targets, lift machines were used to stow the bundles in the wings.

■ 3. Despite the fact that all of the vessel's winches had been surveyed on November 21, 1968, and certified to be in proper working order, the brakes on the whip winch of the number 4 hatch were not properly functioning, thus causing the load to slip or "walk" when suspending a load. The condition was noticed continually from 6:30 P.M. until the time of the accident (about 11:00 P.M.).[1] This winch malfunction constitutes an unseaworthy condition.

4. An unidentified member of the ship's crew, on at least two occasions, attempted to repair the winch but without success.

5. The plaintiff's gang was working in the lower hold of hatch number 4. This level of the hold is divided into two separate compartments by the tunnel shaft which runs fore and aft through the center of this section of the vessel. The accident occurred when the winch slipped as plaintiff and three others were rotating the suspended load, causing the load to swing into the tunnel shaft. Plaintiff's leg was broken when it was pinned between the tunnel shaft and the load. Plaintiff was not guilty of contributory negligence.

■ 6. The Court finds that the stevedore acted unreasonably in continuing to load the heavy bundles of tin with a winch it knew to be defective when it further knew that longshoremen had to manually handle the cargo while the defective winch suspended the same in the air. Not stopping under these circumstances is a breach of the stevedore's WWLP.

7. No instructions were ever issued by any representative of the vessel to continue the loading operation with the defective winch.

8. Medical testimony revealed that the plaintiff suffered a simple, non-displaced fracture of the tibia, which required a long-leg cast. The cast was worn for six weeks. Plaintiff was released by the doctor on March 1, 1969, as being able to return to work. No permanent disability is anticipated. The total medical bill was $352.02.

9. The plaintiff was unable to work from November 22, 1968, until March 7, 1969. He was unable to return to work full-time until April 1969. His 1968 earnings were $7,695.78; his 1969 earnings were $8,750.87.

10. Plaintiff has been paid $1,211.20 in compensation and medical payments under the Longshoreman's and Harbor Worker's Act, Title 33 U.S.C.A. § 901 et seq.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this suit. Title 28 U.S.C.A. § 1333.

■ 2. If a longshoreman is injured as a proximate cause of an unseaworthy condition of a vessel, the vessel owner is liable for the injuries he sustains. Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

■ 3. If the stevedore brings into play an unseaworthy condition of the vessel, it must indemnify the vessel for any damages the vessel suffers as a result of the unseaworthy condition having been brought into play. Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); Cia Maritima Del Nervion v. James J. Flanagan Shipping Corp., 308 F.2d 120 (5th Cir. 1962). However, if the vessel is guilty of conduct sufficient to preclude recovery, it is not entitled to indemnity. Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958).

---

1. Both the winchman and the gang members in the hold voiced several complaints prior to the accident.

■ 4. Once a stevedore is placed on notice that a defective condition exists aboard ship, it must take affirmative action to correct it and to make the ship safe for its intended use. Delaneuville v. Simonsen, 437 F.2d 597 (5th Cir. 1971).

■ 5. There are decisions to the effect that when the stevedore realizes it is unsafe to continue with a loading or discharging operation, it must suspend the longshoring operation. Humble Oil & Refining Co. v. Philadelphia Ship Maintenance Co., 312 F.Supp. 380 (E.D. Pa.1970); Desiano v. Norddeutscher Lloyd, 301 F.Supp. 241 (S.D.N.Y.1969). However, in view of the Supreme Court decision in International Terminal Operating Company, Inc. v. N. V. Nederl. Amerik Stoomv. Maats., 393 U.S. 74, 89 S.Ct. 53, 21 L.Ed.2d 58 (1968), this Court is of the opinion that it is a question of fact whether a stevedore acted reasonably in not stopping work when it becomes aware of an unseaworthy condition.

■ 6. Only conduct on the part of the vessel owner which prevents the stevedore's workmanlike performance is sufficient to preclude indemnity. Southern Stevedoring & Contracting Company v. Hellenic Lines, Ltd., 388 F.2d 267 (5th Cir. 1968). The unsuccessful repair attempts in this case are not sufficient conduct to preclude recovery from the stevedore. If the ship had instructed the stevedore to continue working with the defective equipment or if the accident occurred after a repair attempt but before the stevedore became aware that the defective condition had not been cor-

rected, the repair attempts or the instructions to continue would be considered conduct sufficient to preclude recovery from the stevedore. The crux of this case, however, is that the stevedore continued the loading operation with a defective winch when it knew that the winch had to suspend a heavy load in the air while longshoremen in the hold manually handled it.

■ 7. Knowledge of the existence of an unseaworthy condition need not be given to the stevedore's supervisory personnel as knowledge of a member of a stevedoring gang is imputed to the stevedoring firm. T. Smith & Son, Inc. v. Skibs A/S Hassel, 362 F.2d 745 (5th Cir. 1966).

8. The third-party defendant is entitled to recover from plaintiff under its counterclaim the sum of $1,211.20 paid as compensation and medical payments under Title 33, U.S.C.A. § 901 et seq.

■ The Court after consideration of the Findings of Fact and Conclusions of Law is of the opinion that the plaintiff is entitled to recover from the defendant the amount of $4,352.02.

The Court is of the further opinion that the Third-Party Plaintiff is entitled to a judgment against the Third-Party Defendant in the amount of $4,352.02. The Third-Party Plaintiff is also entitled to a judgment against the Third-Party Defendant for the Third-Party Plaintiff's costs, disbursements and attorney's fees,[2] and if the amount cannot be agreed upon within a reasonable time, the matter will be set down for hearing thereon at a later date.

Judgment will be entered accordingly.

2. Defense of this case having been tendered to the stevedore in accordance with the requirements of Johnson v. Ex- celsior Shipping Co., 319 F.Supp. 986 (S.D.Ala.1970).