James S. TURNER, Plaintiff,

v.

GLOBAL SEAS, INC., Defendant and Third-Party Plaintiff-Appellant,

v.

CERES, INC., and Buffalo Overseas Terminals, Inc., Third-Party Defendants-Appellees.

No. 73–2262.

United States Court of Appeals, Sixth Circuit.

Nov. 13, 1974.

---

John D. Kelleher, McCreary, Ray & Robinson, John H. Hanninen, Cleveland, Ohio, for appellant.

Merritt W. Green, II, R. Paul Wingart, Thomas J. Manahan, Toledo, Ohio, for appellees.

Before EDWARDS, PECK and Mc-CREE, Circuit Judges.

EDWARDS, Circuit Judge.

This appeal concerns a case in admiralty and maritime jurisdiction. Third-party plaintiff-appellant, Global Seas, Inc., owner of the ship M/V First Lady, appeals from the District Judge's denial of an order of indemnification in its favor against third-party defendants-appellees, Ceres, Inc., and Buffalo Overseas Terminals, Inc.

The underlying cause of action (no longer in dispute) was that of Turner, a longshoreman foreman for Ceres, who was injured while inspecting a cargo of steel billets loaded on the M/V First Lady at a dock at Toledo. Turner was preparing to lead a longshoreman crew in loading trucks on top of the steel billet load which had been put aboard by Buffalo Overseas, another stevedoring company at a dock at Buffalo.

Turner alleged that the ship was not in a seaworthy condition at the time of his injuries and that his injuries resulted therefrom. He also alleged that Global Seas, as owner of the ship, was responsible for the unseaworthiness or otherwise caused his injuries by its negligence. The jury found $35,000 damages for Turner, minus 25% for contributory negligence on his part.

After the jury verdict in favor of Turner and against Global Seas had been returned, the District Judge submitted other Special Interrogatories to the same jury pertaining to Global Seas'

third-party indemnification claims against Buffalo and Ceres. In its responses[1] the jury found that both Buffalo and Ceres had failed to perform their work in accordance with their warranty of workmanlike performance. But the jury also found that Global Seas was guilty of conduct which prevented or seriously hampered each of the third-party defendants' performance of its duty in accordance with its warranty. On that basis the District Judge entered judgments in favor of both third-party defendants.

The facts involved in these proceedings must be stated somewhat more fully before we reach the legal issues.

M/V First Lady was owned by Global Seas, Inc. In August of 1970 it was time chartered to Zim Israel Navigation Company and docked at Buffalo, New York, to load 3,320 tons of steel billets. Zim Israel had hired Buffalo Overseas to load the steel billets which measured 4″ x 4″ square and came in lengths from 12′ to 24′ long. They had been bundled into flat bundles 4″ x 16″, which bundles averaged four tons in weight. Buffalo Overseas loaded the billets into four of the M/V First Lady's five holds. The M/V First Lady's loading plan called for the ship to call at Toledo to load army trucks on top of the load of steel billets. Zim Israel had hired third-party defendant Ceres (the employer of plaintiff Turner) to load these trucks at Toledo.

Turner's testimony at trial, which was obviously believed by the jury, was to the effect that the steel billets had been loaded at Buffalo in hills and valleys and voids and without proper dunnage to secure the steel billets from shifting and endangering the Toledo stevedores. Turner testified that he was engaged in inspecting the steel billet load in a hold immediately aft of the deck house when an improperly secured bundle of steel slipped and pinned and crushed his ankle. His testimony concerning the dangerous condition of the load was such as to allow the jury to find contributory negligence on his part in continuing his inspection to the point of injury when he had already observed the hazards described above. This contributory negligence caused the jury to reduce the damages awarded to him in the main case by 25%. Also presumably it is the basis for the jury determination that Ceres was guilty of breach of its warranty of workmanlike performance.

The other principal eyewitness at trial was Sullivan, the president of the Buffalo Overseas Terminals, Inc., who testified to supervising the loading of the steel at Buffalo. While Sullivan testified that the load had been properly secured, he acknowledged that in at least two holds there were major voids and differences in heights of the loaded billets ("hills and valleys") which would have required leveling of the load of billets (or filling of the voids with pallets—or both) before the loading of army trucks at Toledo (which he knew was planned) could be accomplished.

Sullivan's testimony as to why the ship sailed from Buffalo with a load which was not level was as follows:

"We had conversations about completion of the loading. That conversation was that I knew in Toledo they were going to load trucks and in order for them to load the trucks and save them a multitude of lifting of this cargo, re-arranging in order to load trucks on top because as you know, to load these military vehicles on top they have to be at an absolute level place to push. We agreed it was not level. I wanted to level the ship and the Captain said no. I got Sharon on the phone and I explained the situation to him and he said if the Master will not agree to this, there is nothing I can do about it, forget it. So I said the expense of this will fall on you from Toledo, so this is the situation."

On the basis of this (and other) testimony, the jury held that both Buffalo

1. The Special Interrogatories concerning Turner's suit against Global Seas will be found as Appendix A to this opinion and the Special Interrogatories concerning Global Seas' suits for indemnification against Buffalo and Ceres will be found as Appendix B.

and Ceres had violated their contract obligation to perform their stevedoring duties in accordance with their implied warranty of workmanlike performance. But the jury also held that Global Seas had been guilty of conduct which "prevented or seriously hampered" Buffalo and Ceres in the proper performance of their warranty.

■ In dismissing Global Seas' third-party complaint and denying its motion for reconsideration or new trial, the District Judge said:

"Specifically, as to the issue of the defendant's hampering the operations of the third party defendant Buffalo Overseas Terminal, there is the question of the weight to be given to the evidence that the defendant's master refused to delay sailing long enough to permit the third party defendant to make proper stowage of the cargo of steel which afterwards fell and injured plaintiff.

\* \* \* \* \* \*

"The same action of defendant's master which prevented the proper stowage of the cargo in Buffalo also hampered the third party defendant Ceres in its assigned task of loading trucks on top of the steel."

We affirm.

Sullivan's testimony concerning the denial by Global Seas' agents of his request for delay in sailing in order for Buffalo to level the load of steel billets was evidence from which the jury could properly have found that Global Seas "prevented or seriously hampered" both Buffalo's and Ceres' performance of their stevedoring contracts in accordance with their warranties of workmanlike performance. While there are conflicts of evidence in this record pertaining to whether or not proper (or any) dunnage was employed, whether or not the steel billet bundles were piled "steel on steel," whether or not they were properly braced to prevent their shifting, and whether or not plaintiff Turner was injured in a hold which Sullivan intended, if given the chance, to level, we believe that all these fact issues were for jury consideration and resolution.

Appellant Global Seas relies for allowance of indemnification primarily upon the rule set forth in Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). Therein a 5–4 majority of the Court held that a shipowner was not precluded by the Longshoremen's and Harbor Workers' Compensation Act Section 5, 33 U.S.C. § 905 (1970), from claiming indemnification from a stevedoring contractor where that contractor was also the employer of the injured longshoreman. The Court allowed the shipowner's suit for indemnification on the ground that the contractor's negligence had created the unseaworthiness of the vessel and hence the injury for which the shipowner had been held liable and was seeking indemnification. The Court there distinguished Halcyon Lines v. Haenn Ship Ceiling & Fitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952)—a distinction with which the dissenting Justices were unable to agree. Our instant case, however, adds an additional factor not present in the *Ryan* case in that, as noted above, the jury found on disputed but substantial evidence that Global Seas "prevented or seriously hampered" both stevedoring companies in performance of their duty in accordance with their warranties of workmanlike performance.

■ The basic legal proposition in this case is simply that a party to a contract cannot recover indemnification from another contracting party for a breach which the first party caused or substantially helped to cause.

Restatement Of Contracts § 295 says:

"If a promisor prevents or hinders the occurrence of a condition, or the performance of a return promise, and the condition would have occurred or the performance of the return promise been rendered except for such prevention or hinderance, the condition is excused, and the actual or threatened non-performance of the return prom-

ise does not discharge the promisor's duty, unless

(a) the prevention or hindrance by the promisor is caused or justified by the conduct or pecuniary circumstances of the other party; or

(b) the terms of the contract are such that the risk of such prevention or hindrance as occurs is assumed by the other party."

Restatement Of Contracts § 295 (1932).

In the closest Supreme Court case to our facts, the Court cited § 295 of Restatement of Contracts and held that a ship or shipowner may recover indemnification for substandard performance of work by a stevedoring company—provided the would-be indemnitee is not itself guilty of conduct which precludes recovery. *See* Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958). *See also* Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 455, 3 L.Ed. 2d 413 (1959).

In *Weyerhaeuser* the actual language employed was:

"If in that regard respondent rendered a substandard performance which led to foreseeable liability of petitioner, the latter was entitled to indemnity absent conduct on its part sufficient to preclude recovery. The evidence bearing on these issues—petitioner's action in making the shelter on its ship available to respondent's employees in Boston although it apparently was unsafe, as well as respondent's continued use of the shelter for five days thereafter without inspection—was for jury consideration under appropriate instructions."

Weyerhaeuser S.S. Co. v. Nacirema Operating Co., *supra*, 355 U.S. at 567, 78 S.Ct. at 441. (Footnotes omitted.)

*See also* Waterman S.S. Corp. v. David, 353 F.2d 660 (5th Cir. 1965), cert. denied, 384 U.S. 972, 86 S.Ct. 1863, 16 L. Ed.2d 683 (1966); Calderola v. Cunard S.S. Co., 279 F.2d 475 (2d Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 172, 5 L. Ed.2d 104 (1960).

The Supreme Court has also emphasized that the question of the reasonableness of conduct of the parties (here that of the stevedore) should be resolved by jury verdict rather than by the Court as a matter of law. In reversing the Second Circuit's decision in Albanese v. N. V. Nederl. Amerik Stoomv. Maats., 392 F.2d 763, the Supreme Court said:

"The cause of the longshoreman's injury was carbon monoxide inhalation that occurred as he and other longshoremen were using gasoline-powered vehicles to move cargo in the ship's lower hold. The shipowner contends that the stevedore's hatch boss acted unreasonably. When longshoremen complained about the lack of ventilation in the hold, the hatch boss informed one of the ship's officers that his men would walk off the job unless the officer turned on the ship's ventilating system. The officer told the men to continue working and promised to activate the ventilating system, which was within the shipowner's exclusive control and which was concededly adequate to ventilate the hold. When, less than 10 minutes later, the hatch boss realized that the ventilating system had not been turned on, he ordered the men from the hold. The injured longshoreman collapsed as he was ascending a ladder to leave.

"The Court of Appeals said that the hatch boss should have ceased work when he first learned that the ship's ventilating system was not operating, despite the officer's promise to turn on the system. Alternatively, he should have used the stevedore's blowers, which had been left on the pier, to ventilate the hold. The jury, however, in response to a special interrogatory, found that the stevedore had acted reasonably in continuing to work for a brief period in reliance on the officer's promise. We cannot agree with the Court of Appeals that the stevedore acted unreasonably as a matter of law. Under the Seventh Amendment, that issue should have been left to the jury's determination. Any other ruling would be inconsist-

ent with this Court's decision in Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355 [82 S. Ct. 780, 7 L.Ed.2d 798] (1972)." International Terminal Operating Co. v. N. V. Nederl. Amerik Stoomv. Maats., 393 U.S. 74, 89 S.Ct. 53, 21 L.Ed.2d 58 (1968).

We recognize that there are cases which have allowed the shipowner to recover on an indemnity claim against a stevedoring company in spite of the fact that the ship itself contributed to the injury by its unseaworthiness. Rederi A/B Nordstjernan v. Crescent Wharf & Warehouse Co., 372 F.2d 674 (9th Cir. 1967); Brock v. Coral Drilling, Inc., 477 F.2d 211 (5th Cir. 1973); Southern Stevedoring & Contracting Co. v. Hellenic Lines, Ltd., 388 F.2d 267 (5th Cir. 1968).

Essentially these cases weighed the negligence of the shipowner against that of the stevedoring company and found the greater fault on the part of the latter. In the last of these cited above, the Fifth Circuit said:

> "III. The District Court held that, since it was the negligence of Southern that brought the unseaworthiness of the vessel into play, such unseaworthiness did not constitute conduct on the part of the ship sufficient to preclude recovery, and Hellenic was not guilty of any other conduct sufficient to preclude recovery of indemnity. Whether or not the total conduct of Hellenic was sufficient to preclude recovery is determined by the law of contract, Weyerhaeuser Steamship Co. v. Nacirema Operating Co., supra; Waterman Steamship Corporation v. David, 5 Cir. 1965, 353 F.2d 660; Cf. Restatement of Contracts (First), Sections 295, 315; in that such conduct, to preclude indemnity, must be sufficient to bar the enforcement of the contract. Calmar Steamship Corporation v. Nacirema Operating Co., 4 Cir. 1959, 266 F.2d 79. The vessel's unseaworthiness, although a proxi-

mate cause of the accident, is not in itself conduct necessarily sufficient to preclude recovery. T. Smith & Son, Inc. v. Skibs A/S Hassel, supra [5 Cir., 362 F.2d 745]. See also Calmar Steamship Corporation v. Nacirema Operating Co., supra; Lusich v. Bloomfield Steamship Co., 5 Cir. 1966, 355 F.2d 770; D/S Ove Skou v. Hebert, supra [5 Cir., 365 F.2d 341]. Without entering the thicket of primary and secondary, or active and passive negligence, Weyerhaeuser Steamship Co. v. Nacirema Operating Co., supra, the trier of fact must weigh the substantiality of the fault of the shipowner against the breach of warranty by the stevedore to determine whether the former's conduct is 'sufficient to preclude indemnity.' Waterman Steamship Corp. v. David, supra." Southern Stevedoring & Contracting Co. v. Hellenic Lines, Ltd., *supra*, 388 F.2d at 271–272.

In our instant appeal it appears to us that the jury under proper instructions has done the weighing of the substantiality of the fault of the shipowner against the breach of warranty to determine whether the shipowner's conduct was "sufficient to preclude indemnity."

The jury on this record had a right to conclude (as it did) that the effect of Global Seas' refusal to delay the sailing of the M/V First Lady from Buffalo "prevented" Buffalo Overseas from leveling the steel billet load—and thus securing it. Similarly, the jury had a right to find that the consequent failure of Buffalo Overseas to level and secure the steel billet load "substantially hampered" Ceres in the workmanlike performance of its stevedoring duties. In the original case the jury had weighed the fault of the shipowner against that of claimant Turner and determined that the shipowner's fault was in 75 to 25 ratio to that of Turner. Since clearly the only fault charged to Ceres in the third-party indemnity action was that of Turner, we believe this ratio properly applies in the indemnity action likewise.

Under this view, the District Court was correct in denying indemnity.[2]

▮ Global Seas' complaint did not seek contribution (as distinguished from indemnity) from either of the third-party defendants, and no issue concerning contribution was raised before the District Court. Under these circumstances, it would be inappropriate for us to consider the interesting problems concerning contribution discussed in Cooper Stevedoring Co. v. Fritz Kopke, Inc., 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974).

▮ Global Seas also claims that there is conflict between the jury's general verdicts against Buffalo and Ceres and the special verdicts. As to this the District Judge was correct in holding that the special verdicts prevail. Barnes v. Brown, 430 F.2d 578 (7th Cir. 1970). We also feel that under the view of the facts and jury verdicts set forth above, the jury's answers may be viewed as consistent. *See* A. & G. Stevedores v. Ellerman Lines, 369 U.S. 355, 364, 82 S. Ct. 780, 7 L.Ed.2d 798 (1962).

We find no reversible error in the District Judge's charge or any omissions therefrom.

The judgment of the District Court is affirmed.

## APPENDIX A

### SPECIAL INTERROGATORIES AS ANSWERED BY THE JURY

(Filed April 20, 1973)

1. Was the defendant, Global Seas, Inc., negligent?
   (X) Yes    ( ) No

2. If the answer to No. 1 is yes, did that negligence in any way or manner cause the plaintiff's injuries?
   (X) Yes    ( ) No

3. Was the First Lady unseaworthy?
   (X) Yes    ( ) No

4. If the answer to No. 3 is yes, did that unseaworthiness in any way or manner cause the plaintiff's injuries?
   (X) Yes    ( ) No

5. If the answers to No. 2 or No. 4 are yes, at what amounts do you fix the damages sustained by the plaintiff as a result of the accident of which he complains?
   $35,000.

6. Was the plaintiff negligent?
   (X) Yes    ( ) No

7. If the answer to No. 6 is yes, did the negligence in any way or manner cause plaintiff's injuries?
   (X) Yes    ( ) No

8. If the answer to No. 7 is yes, to what degree was the plaintiff negligent? (0% to 100%)
   25%

---

2. This result would follow much more directly from the language of the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act Section 5, 33 U.S.C. § 905 (Supp. II 1972), amending 33 U.S.C. § 905 (1970), which, however, are not applicable to this appeal.

## APPENDIX B

### SPECIAL INTERROGATORIES AS ANSWERED BY THE JURY

(Filed April 20, 1973)

1. Did the third-party defendant, Ceres, Inc., perform its work in accordance with its warranty of workmanlike performance?

    ( ) Yes      (X) No

2. If the answer to #1 is no, did such failure in any way or manner cause the plaintiff's injuries?

    (X) Yes      ( ) No

3. Was the defendant, Global Seas, Inc., guilty of conduct which prevented or seriously hampered third-party defendant's Ceres, Inc., performance of its duty in accordance with its warranty of workmanlike performance?

    (X) Yes      ( ) No

4. Did the third-party defendant, Buffalo Overseas Terminals, Inc., perform its work in accordance with its warranty of workmanlike performance?

    ( ) Yes      (X) No

5. If the answer to #4 is no, did such failure in any way or manner cause the plaintiff's injuries?

    (X) Yes      ( ) No

6. Was the defendant, Global Seas, Inc., guilty of conduct which prevented or seriously hampered third-party defendant's, Buffalo Overseas Terminals, Inc., performance of its duty in accordance with its warranty of workmanlike performance?

    (X) Yes      ( ) No